## NEEDHAM G. SPIVEY *v*. THE STATE.

1. CRIMINAL LAW. *Venue. Jurisdiction. Panola County.*
   Under the act of 1878 dividing Panola County into two court districts, a conviction for murder in the district in which the homicide was not committed must be set aside for want of jurisdiction in the court.

2. SAME. *Homicide. Evidence. Declaration in presence of accused.*

S. was indicted for the murder of B. On the trial, a witness for the State was permitted to testify, against the objection of the defendant, that the son of the accused, immediately after the killing, and in the presence of his father, called to his brother, saying, "Run here; pa has killed B." *Held,* that this testimony was properly admitted.

3. SAME. *Homicide. Evidence. Correspondence.*

On the morning of the 12th of June, 1880, S. wrote a note to B., informing him that if his mules should be found again in S.'s field he would shoot them. B. replied by note, inviting S. to meet him after dinner at a place named, "and bring your shot-gun; we will try them; as I consider that it was a banter this morning." About one o'clock of that day B. was at S.'s house, and asked him why he had not met him as proposed. Angry words passed between them, and B. sent for and obtained his gun; but nothing further then occurred, and B., with two or three companions, went to their field to work. About sunset of the same day they returned to the front of S.'s house, when B. dismounted from his mule and started into the house, but before reaching it was shot by S. Upon the trial of S., under an indictment for the murder of B., the notes above referred to were offered in evidence by the defendant, but were excluded by the court. S.'s defence was (and his evidence tended to prove it), that he killed B. because of a reasonable apprehension excited by the hostile demonstration of B., and honestly entertained by the accused, that he was at the time in imminent peril of some great bodily harm then about to be done him by B., to avert which he shot B. *Held,* that the notes were pertinent to the inquiry involved in the issue, and should have been admitted in evidence. They may be regarded as the beginning of the fatal difficulty between S. and B.

4. SAME. *Homicide. Evidence. Character of deceased.*

In the case above stated, the defendant proposed to prove that the deceased was an "overbearing, turbulent, and impetuous man," but the court excluded the evidence. *Held,* that such evidence was properly rejected. If B. was "overbearing, turbulent, and impetuous," that did not heighten the danger the accused was in when he committed the homicide, nor excite his apprehension from the conduct of B., who may not have been violent, dangerous, or regardless of human life; and the inquiry as to the character of the deceased should have been limited to such features thereof as had a tendency to throw light upon the alleged apprehension of the accused from the acts of B., or to illustrate the conduct of the deceased as an assailant.

5. SAME. *Homicide. Instruction. "Peril" of slayer.*

Upon the trial of an indictment for murder, the following instruction was given for the State: "Fear or apprehension, however sincerely entertained by the defendant, that B., the deceased, designed to take his life, or to do him some great bodily harm, affords no excuse or justification whatever to the defendant. He may have had a lively apprehension that his life was in imminent danger, and sincerely have believed that the ground of his apprehension was just and reasonable, yet if he acted upon them (such apprehension and belief), and in doing so killed B., he did so at his peril." *Held,* that this instruc-

tion was misleading and erroneous, in not making it plain to the jury that the
"peril" referred to is the risk of what the jury will determine as to the pro-
priety of the action of the accused.

6. SAME. *Instruction. Credibility of witnesses.*
   An instruction in these words is erroneous: "If the jury believe from the
   whole evidence that any witness or witnesses for the defendant wilfully and
   knowingly testified falsely to any material fact in the case, the jury should
   disregard the testimony of such witness or witnesses, and should disbelieve
   them altogether, as unworthy of credit." *Finley* v. *Hunt,* 56 Miss. 221, cited.

APPEAL from the Circuit Court of Panola County.

Hon. SAMUEL POWELL, Judge.

Needham G. Spivey was convicted of the murder of W. W.
Bailey. The circumstances of the homicide, as shown by the
record, are sufficiently set forth in the opinion of the court.

On the trial, a witness for the State testified that immedi-
ately after the killing, John Spivey, a son of the accused, in
the presence of his father, called to his brother, saying, "Run
here; pa has killed Capt. Bailey." This testimony was ad-
mitted, against the objection of the defendant. Two notes,
being correspondence between the deceased and the accused,
were offered in evidence by the defendant, but the court refused
to admit them. The purport of the notes and their connection
with the case are stated in the opinion of the court. The
court also refused to admit in evidence testimony offered by
the defendant to the effect that Bailey was an "overbearing,
turbulent, and impetuous man."

The fifth instruction given for the State was as follows:
"Fear or apprehension, however sincerely entertained by the
defendant, that the deceased (Bailey) designed and intended to
take his life, or to do him some great bodily harm, affords no
excuse or justification whatever to the defendant. He may have
had a lively apprehension that his life was in imminent danger,
and sincerely and truly have believed that the ground of his
apprehension was just and reasonable, yet if he acted upon
them, and in so doing killed Bailey, he did so at his peril."

The thirteenth instruction for the State was in these words:
"If the jury believe from the whole evidence that any wit-

ness or witnesses for the defendant wilfully and knowingly testified falsely to any material fact in the case, the jury should disregard the testimony of such witness or witnesses, and should disbelieve them altogether, as unworthy of credit.''

Several instructions asked by the defendant were refused by the court ; but they do not present any point to be reported, and therefore are not here set out.

The defendant took exceptions in proper form to the action of the court upon the evidence and instructions, and from the judgment rendered appealed to this court.

*W. D. Miller,* for the appellant.

1. The court erred in excluding evidence as to the character of the deceased for violence. *Turpin* v. *The State,* 77 N. C. 478 ; *Cotton* v. *The State,* 31 Miss. 504.

2. The fifth instruction for the State was palpably wrong. It attempted to embody the law as laid down in *Kendrick* v. *The State,* 55 Miss. 436, but it perverted the principle therein recognized, by ignoring an important qualification, and left the jury no alternative but to convict.

3. The judgment must be reversed because the proof shows that the crime was committed in the Second District, while the conviction was in the First District of Panola County. Acts 1878, p. 149, sect. 7.

*W. D. Miller* also made an oral argument.

*L. Brame,* on the same side, by appointment of the court.

1. The indictment was found and the trial had in the First District of the county, while the killing occurred in the Second District. The court had no jurisdiction. Acts 1878, p. 149, sect. 7 ; *Moore* v. *The State,* 55 Miss. 432 ; *Vaughn* v. *The State,* 3 Smed. & M. 553.

2. Bailey being the aggressor at the time of the killing, it was a palpable error to exclude the evidence that he was an overbearing, violent man. *Cotton* v. *The State,* 31 Miss. 504 ; Whart. on Hom., sect. 606 *et seq.* For this reason it was also improper to exclude the note written by Bailey to the de-

fendant, on the day of the killing. *Johnson* v. *The State*, 54 Miss. 430.

3. The thirteenth instruction for the State was clearly erroneous. It should not have been restricted in its application to the defendant's witnesses. And the court should not have charged the jury that if a witness testified falsely his testimony should be disregarded, but only that they *might* discredit it.

*L. Brame* also argued the case orally.

*Jenkins & Shotwell*, on the same side, by appointment of the court.

1. The court erred in excluding from the evidence the note from Bailey to Spivey. It was a challenge, and contained a threat which was communicated to Spivey before the killing occurred. It was competent evidence. *Johnson* v. *The State*, 54 Miss. 485.

2. The court erred in excluding the testimony offered by the defendant to establish the general character of the deceased as being turbulent and impetuous. Whart. Cr. Law, 641; Whart. on Hom. 619.

*T. C. Catchings*, Attorney-General, for the State, filed no brief.

CAMPBELL, J., delivered the opinion of the court.

Because the homicide is shown to have occurred in the Second Court District of Panola County, and therefore the Circuit Court of the First District did not have cognizance of the case, the judgment will be reversed; but, with a view to another trial, it is proper to pass on other questions presented by the record.

The fact that the record here does not contain a copy of the indictment is not cause for reversal, as decided on the motion in this case on a former day.

The testimony that John Spivey, in the presence of the accused, called to his brother, saying, " Run here; pa has killed Capt. Bailey," was properly admitted. The note sent by

Bailey to the accused in the forenoon of the day of the killing had such relation to the subsequent conduct of Bailey with respect to the accused as to make it proper evidence. It serves to show the state of Bailey's feelings, and to explain the inquiry which he addressed to the accused, near one o'clock that day, about not meeting him.

The accused was entitled to exhibit Bailey before the jury just as he confronted him when he shot him. His defence was that he killed Bailey because of a reasonable apprehension, excited by the hostile demonstration of Bailey, and honestly entertained by the accused, that he was at the time in imminent peril of some great bodily harm then about to be done him by Bailey, to avert which he shot him. His evidence tends to support this view of the killing. The jury was to determine as to the reasonableness of the apprehension of the accused, situated and circumstanced as he was at the time, knowing what he knew of Bailey, and his feelings and disposition towards him, and seeing what he saw at the time in the action of Bailey, and interpreting it by the aid of his knowledge of his disposition towards him. The accused sent Bailey a note in the morning of the day of the killing, informing him that if his mules were found again in his (accused) wife's field, the accused would shoot them. Bailey replied that he considered that a " banter," and invited the accused to meet him after dinner, at a place named, with his " good shot-gun ; we will try them." About one o'clock Bailey was at the house of the accused, and asked him why he had not met him as proposed. Angry words followed, and Bailey sent to his house for his gun, which was soon brought; but nothing further occurred, and Bailey and his companions went to the cotton-field to work, and about sunset returned to the front of the house of the accused, when Bailey dismounted from the mule he was riding, and started into the house of the accused, and was shot. The theory of the defence was that Bailey was so infuriated by the note sent him by the accused, threatening to shoot his mules, that he thought of bloodshed

and vengeance on accused, and proposed a meeting to try their guns on each other, and at one o'clock sought a quarrel ; and that when, at sunset, Bailey, attended by his friends, stationed conveniently to render needed aid, undertook to go into the house of the accused, it was to finish the quarrel begun in the forenoon and renewed at one o'clock, and intended by Bailey to be concluded by great bodily harm to the accused. The note of Bailey to the accused, and that of the accused to Bailey, were pertinent to the inquiry involved in the issue. The accused was entitled to show how Bailey was affected by his note to him, as indicated by his reply to it and his subsequent conduct. The note may be regarded as the beginning of the difficulty, which ended in the death of one of the parties to the correspondence, and it is valuable as illustrating the commencement of the hostilities, which terminated the same day in the death of Bailey. The notes, the quarrel at one o'clock, and the occurrences at sunset, may justly be regarded as parts of a whole, successive acts of the tragedy, and proper to present the actors before the jury as they were with respect to each other at the time of the killing. It is because there is evidence to be considered by the jury of hostile conduct by Bailey, apparently threatening great personal injury to the accused at the time of the killing, that it is proper to admit the written correspondence which began the trouble between the parties on that day.

The court did not err in rejecting evidence that Bailey was an " overbearing, turbulent, and impetuous man." That was irrelevant. If he was overbearing in disposition, quarrelsome, and impetuous, it does not follow that he was given to violence, and dangerous. The principle on which it is admissible, in case of apparent danger to the accused from some overt act of the deceased indicating a present purpose to do him some great bodily harm, to show the character of the deceased is, that as the jury are to judge the conduct of the accused, circumstanced as he was at the time of the act for which he is on trial, they should be informed as to the sort of person alleged

to have done the overt act, apparently threatening, which is claimed to have had such import as to have justified the accused in acting upon it as he did. There is great difference among men. Some are revengeful, vindictive, brutal, violent, and dangerous. Some regard not the laws of God or men. They do not value human life, and would not shrink from taking it on slight provocation. They are quick to take offence, and ready to inflict great bodily harm, regardless of consequences. They habitually carry deadly weapons concealed on their persons, and are ready to use them on very slight grounds. One who is the object of a hostile demonstration by such a person, apparently indicative of a present purpose to do him some great bodily harm, may justly apprehend danger from slighter circumstances than in case of a different sort of man would be sufficient to cause such apprehension. The value of a thing said or done depends on who says or does it, in a large degree. A disposition to violence, ferocity of temper, or recklessness of human life, with animosity to the accused on the part of the assailant, are well calculated to quicken the apprehension of the assailed, and make pregnant with meaning an act which might signify little if done by another. Hence it is admissible to show the peculiar character of the deceased as a quarrelsome, *vindictive, and dangerous* person, when he was the assailant and the defence is that the homicide was justifiable because of the reasonable apprehension of great bodily harm by the accused from the deceased, as indicated by some overt act on his part apparently threatening immediate danger of such harm being inflicted. If the accused offered evidence to show the character of Bailey to have been such as to justify a reasonable apprehension from what he did immediately preceding his being killed, it was admissible ; but, as we have stated, it was not material that Bailey was an "overbearing, turbulent, and impetuous man," for that did not heighten the danger the accused was in, nor serve to excite his apprehension from the acts of Bailey, who, though "overbearing, turbulent, and impetuous," may not

have been *violent, dangerous, or regardless of human life*. He may not have been ferocious, revengeful, vindictive, or given to violence. The inquiry should be limited to such features of character as have a tendency to throw light on the alleged apprehension of the accused by reason of that character, or as may illustrate the conduct of the deceased when shown to be an assailant. One may not be killed because he is disposed to violence towards men, but if such an one is an assailant, it may mean more to the person attacked than if another was the assailant. It must first appear that there was an attack, and then the accused, who was the object of it, may show whatever will throw light on the question whether he had just ground to believe that the attack was felonious and dangerous.

The fifth instruction for the State does not fairly present the principle intended to be announced. It is calculated to mislead, by conveying a meaning not intended, and not correct. It is true that in acting on one's apprehensions of danger, and slaying his assailant, he acts at his peril, — that is, he takes the risk of what a jury will determine as to the propriety of his action, — but this instruction fails to tell the jury what peril is meant, and it is highly probable that it conveyed an idea which unduly abridged the right of self-defence from apparent danger.

The thirteenth instruction for the State is clearly wrong, and is directly in the face of a decision of this court on the precise question. *Finley* v. *Hunt,* 56 Miss. 221.

We find no error in the refusal by the court of the eighth, eleventh, twelfth, and thirteenth instructions asked by the accused. The evidence suggests no doubt as to who did the shooting which killed Bailey, and it was therefore proper to refuse the eighth instruction. The others were unnecessary, and objectionable in other respects.

Judgment reversed and new trial awarded.