## MURPHY *v.* STATE.

[92 South. 694, No. 22718.]

1. HOMICIDE. *Circumstantial evidence held to sustain conviction.*

In a murder case the evidence for the state is sufficient, under the rules of circumstantial evidence, where it shows that the deceased was last seen in an automobile with the persons indicted for the crime going in the direction where the body was found some weeks later, on the evening of the supposed killing, and that afternoon shooting was heard in that direction, and the voice of the deceased was heard between the shots crying in distress, and after the shooting was heard no more, and that the shooting was at or near the place where the body was afterwards found in a millrace, and that after the shooting the car was cranked and started back and passed the house of the person who saw them going on, it being night when they returned, and the evidence showed statements by the defendants that deceased had left the state, and also that the defendants and deceased had been engaged in making moonshine whisky, and that admissions of guilt had been made by one of the defendants.

2. CRIMINAL LAW. *Instruction on conspiracy held not error.*

In the case above stated the following instruction for the state was not reversible error: "That if they believe from the evidence in this case beyond a reasonable doubt that there was an unlawful agreement between Joe Murphy, Warren Murphy, and Jim Cash, or between Joe Murphy and either Warren Murphy and Jim Cash, to unlawfully take the life of the deceased and that in pursuance to

this conspiracy or agreement the defendants charged in this indictment, or either of them, killed and murdered the deceased as charged therein, then the defendant Joe Murphy is as truly guilty of murder as though he had actually committed the homicide by himself alone." This instruction is supplemented by others defining murder and the degree of proof required to sustain it.

3. HOMICIDE. *Evidence that deceased and defendants had been engaged in unlawful manufacture of liquor held admissible to show motive.*

   In a murder case depending upon circumstantial evidence for conviction, evidence that the deceased and defendants were jointly engaged in the unlawful manufacture of intoxicating liquor is admissible as a circumstance, in connection with other evidence to show motive, and, if coupled with other facts properly tending to show guilt, such evidence should be admitted.

4. CRIMINAL LAW. *Testimony as to statement of one defendant held admissible as against another present at conversation.*

   In a murder case depending upon circumstantial evidence, and where a conspiracy is shown by the evidence, and that all the defendants were at the killing, but the proof does not show which fired the fatal shot, a statement by one of the defendants that another, who was present at the conversation and did not deny the statement, fired the shot, and that he, the person making the statement, assisted in disposing of the body, and that defendant being tried was there, is admissible in evidence.

APPEAL from Circuit Court, Marshall county.

HON. W. A. ROANE, Judge.

Joe Murphy was convicted of murder, and he appeals. Affirmed.

*L. A. Smith*, for appellant.

We ask the court to consider their ruling in *Spight* v. *State,* 83 So. 84, 120 Miss. 752, in which the court declares that it will not to any extent usurp the function of the jury if the testimony offered is such that a jury is reasonably warranted in believing it and acting upon it. Is it reasonable that one state witness should convict appellant because of having heard, even if we concede he could have done so, a mile and three quarters away, shouts and

cries and shots at nine o'clock or after at night; and another state witness should convict the same appellant in same case because, even if we concede he could see the cars one hundred and five yards away through a screen of bush and trees, he saw appellant and codefendants and the deceased in an auto on the road to the bottom in the afternoon at 3:30 o'clock, and saw the same car come back, containing all its previous passengers except deceased, at eight o'clock the same night. Are these slightly probable facts, all highly circumstantial going to be construed to be such reasonable proof of the guilt of an accused in a capital case that they will be permitted to discount and disprove the direct evidence of the negro Sykes (not under indictment as was Caldwell for a felony at the time of his testimony), and whose statement is not so palpably false as is that of the other negro Newt Alston and which fits in with the evidence of white men?

In *Nalls* v. *State*, 90 So. 892, a murder case, this learned court declared in the syllabus: "A conviction may be had on circumstantial evidence alone when by it guilt is proven beyond a reasonable doubt; but before such evidence can be said to prove guilt beyond a reasonable doubt it must exclude every other reasonable hypothesis than that of guilt." In that case, the court held the facts insufficient to sustain a verdict of guilty, and discharged the appellant. Let us see if there is not an hypothesis in this case, a reasonable one in the extreme, inconsistent with the guilt of appellant, and appearing from the evidence of the state, and strengthened by the evidence of the defense.

In the first place, the deceased was not closely thrown with appellant, like he was with his codefendants, Warren Murphy and Jim Cash, for whom deceased worked. In the next place, appellant had never had any quarrel with the deceased, as had occurred between Jim Cash and the deceased with reference to the fence gap, and which quarrel was still smouldering in the mind of Cash long after it occurred, as is shown by his recurring to it, as detailed by David Pryor.

Again, conceding for the sake of our point, that Lewis Caldwell, altho under indictment for larceny, was telling the truth when he saw the car that afternoon and that Virgie Pryor, the deceased, was in it, with Warren Murphy and Jim Cash. He might be correct that far, and incorrect, owing to the distance and the obstructions between him and the car, when he thought he saw appellant therein, because the whereabouts at that time of the appellant have been fully accounted for, as elsewhere, by Sykes, Newcom, Mrs. Murphy and Miss Maude Murphy.

And further, conceding, for the sake of argument, that Newt Alston has in fact the miraculously powerful hearing he claimed, and did hear the shouts and shots in the creek bottom at nine o'clock at night. Still that would not involve necessarily the presence of the appellant at the scene of the tragedy because, according to Mrs. Murcheson, Mrs. Murphy and Miss Maude Murphy the appellant was at that hour safe within the confines of his home, peacefully entertaining the guest, Mr. Murcheson, many miles away from the old mill site in the creek bottom.

There is no evidence in the record anywhere that appellant had any agreement with either or both his codefendants to kill and murder the deceased. The only approach to it is that when Jim Cash and deceased were quarreling about the fence gap, David Pryor said that appellant told Cash to let deceased alone they would get him! That could mean any of a dozen things; that they would surrender him to the custody of the law, or give him a whipping; or run him off; or fire, discharge, him. Certainly it is not enough for a jury in a murder case to hold to be sufficient to prove a conspiracy beyond a reasonable doubt; and in a murder case founded on circumstantial evidence to be sufficient to exclude every other reasonable hypothesis!

Another objection we have to the charge is that it is indefinite and vague and ambiguous, and violates the rule laid down by this court in *Smith* v. *State,* 91 So. 41, which requires that the ingredient of malice aforethought must be clearly set forth in such charges, and this charge is in-

sufficient in its compliance with the law, because it says simply: "To unlawfully take the life of the deceased."

In support of our position as to the passing or continuance of the case, we cite *Brooks* v. *State,* 108 Miss. 571, 67 So. 53 and *Johnson* v. *State,* 111 Miss. 282, — So. 239. Wherefore we most respectfully urge upon the court the reversal of the case, and its remand; or its reversal and the discharge of the appellant.

*H. Cassedy Holden,* assistant attorney-general, for the state.

The main contention of the appellant is that the evidence was insufficient to support the verdict. The rule is, where circumstantial evidence is relied upon entirely, that the evidence must be sufficient to convince the jury beyond a reasonable doubt and of a moral certainty, and to the exclusion of every other reasonable hypothesis except that of guilt.

In this case the jury was properly instructed by the court that they must believe in the guilt of defendant beyond all reasonable doubt, to a moral certaintly, and to the exclusion of every other reasonable hypothesis. Their exclusive right to believe such witnesses as it chose to believe and to disbelieve those witnesses whose credibility it doubted.

The circumstances indicated the certain guilt of the defendant, Warren Murphy and Jim Cash. The defendant's witness, if believed, proved an alibi for the defendant. But the jury had the right to disregard the alibi testimony and to accept the circumstantial evidence. Are the circumstances sufficient? If not, the case should be reversed. It is submitted that the chain of circumstances is without a weak link.

Admission of testimony concerning the making of whiskey was not erroneous. This circumstance was very vital and suggestive. In fact, it was the theory of the state that the deceased was murdered because the defendant and his

confederates were afraid the deceased would tell on them. And there is other evidence that indicates this to be the fact. After the shooting in the swamp, one witness heard a crowd of white men coming out of the swamp cursing and saying they were tired of negroes interfering in their business. The fact that whiskey was being made was legitimate evidence to prove motive on the part of the defendant and his codefendants.

The state had a right to show one or more reasons why the defendant and his confederates were interested in getting rid of the deceased. The appellant complains of the granting of instructions for the state, Number 4. This is an instruction on conspiracy and it is complained of because it is contended that there is no evidence in the record of conspiracy.

But what of the threat of the appellant to kill the deceased, and the threats by Cash and Warren Murphy to do the same thing—threats which were made the day before the deceased disappeared? What of the astonishing similarity between the explanations of the appellant and Warren Murphy as to the whereabouts of the deceased when they were asked about this two or three weeks after the disappearance? What of the spiriting away of David Pryor, the little brother of deceased, just before the disappearance? And what of the testimony of the witness who saw the appellant, Cash, and Warren Murphy and the deceased riding in a car toward the bottom late in the afternoon of the day the deceased was killed? What of the confession of Cash in the jail to the effect that he and Warren Murphy and the appellant were present at the killing of the deceased? There is ample evidence of conspiracy and instruction Number 4 was based squarely upon this evidence.

There is nothing in *Smith* v. *State*, 91 So. 41, which could be construed to condemn instruction Number 4 in the case at bar.

Instruction Number 1 for the state defines murder and instruction Number 2 defines the malice essential in mur-

der cases. Considering these two instructions together with instruction Number 4, the jury was correctly charged as to the law of the case. The court committed no error in refusing to grant a continuance, or to postpone the case to a later day during the term. The granting of a continuance is a matter within the discretion of the court, and there is no showing in this record that this discretion was abused to the prejudice and injury of the appellant.

The testimony of the absent witnesses was merely cumulative. These absent witnesses were alibi witnesses and but two appeared and testified. The defendant introduced five alibi witnesses whose testimony, if believed, would have entitled the defendant to an acquittal. Two absent witnesses, C. M. Rome and George Oliver, were served with process and appeared but were not introduced by the defendant.

In view of the fact that the indictment was returned February 28th, and the trial did not take place until March 7th, it is submitted that the defendant had ample time to prepare his defense, and he suffered no prejudice by the refusal to grant him a continuance. The judgment should be affirmed.

Ethridge, J., delivered the opinion of the court.

The appellant was indicted, tried, and convicted for the murder of Virgil Pryor, and sentenced to a life term in the state penitentiary.

The body of the deceased was found in a millrace in a badly decomposed condition, but several witnesses testified positively to his identity and also to the identity of his clothing and shoes. The theory of the state was that the deceased was killed by the appellant and others on or about the 27th day of September, 1921, being the fourth Tuesday of the said month. The deceased had been working with a brother of the appellant and lived at his house. The appellant and said brother, Warren Murphy, and another man named Jim Cash, who was a brother-in-law of

the said Murphys, were indicted for the said murder. The
proof showed that said parties indicted and the deceased
had been engaged in the manufacture of illicit intoxicating
liquors, and that the appellant disappeared on the said
Tuesday evening when he was supposed to have been
killed and had not been seen until his dead body was found
in the said millrace. The father of the appellant after the
disappearance of the deceased made inquiry of Warren
Murphy, with whom the deceased lived, and was told not
to be uneasy, that the deceased had gone to Arkansas, and
that said Warren Murphy had furnished him with eight
dollars and fifty cents for that purpose. Another witness
testified to a conversation between appellant and herself
with reference to some chickens which had been stolen
from her, and said that appellant stated to her that the
deceased had gone to Arkansas and would not return soon,
and that she need not be uneasy about any more of her
chickens being stolen. It was further shown in evidence
that on the night preceding the disappearance of the de-
ceased the appellant took the brother of deceased, who was
a negro, the appellant being a white man, to his house
and kept him there in the house during that night, stating
to the said brother that the revenue officers were in the
neighborhood, and that he was expecting them to arrest
the said party. However, the said brother of the deceased
left the premises of appellant that morning without re-
straint and unmolested. On the afternoon of the disap-
pearance of the deceased a witness testified to seeing the
appellant and the deceased, Warren Murphy, and Jim Cash
in a car going in the direction of the swamp and in the di-
rection of the place where the dead body was afterwards
found, and that late in the afternoon he heard shooting in
that direction, and after dark heard the car returning and
heard parties in the car stating that they were tired of
negroes interfering with their business, but did not recog-
nize the voice of any one of the defendants so indicted.
Another witness testified that on the evening in question
he heard hollowing in the direction of where the body was

found and recognized the voice of the deceased; that the
hollowing indicated that the person was in distress; that he
heard a shot and then a little quiet, and then more hollowing
and a second shot, an additional hollowing, and then a third
and larger shot, after which he heard no more hollowing,
but heard the car cranked up and start on the return trip,
and that the said car passed the residence of the other wit-
ness who testified to seeing the parties going in the direc-
tion of the scene of the alleged killing.  The hands of the
deceased, when found, were cut off above the wrists, and
there was a large hole in the side of his forehead, and he
had been shot in another place.  A brother of the deceased
also testified that he was confined in the jail subsequent
to the disappearance of the brother with the parties in-
dicted in the present case; that the white men were up-
stairs, and that he was downstairs, and that he heard Jim
Cash stating to another party who was in jail that he
(Cash) had nothing to do with the killing except to help
throw the body in the creek; that Warren Murphy did the
killing; and that Mr. Joe was up there.  It is also shown
in evidence that Jim Cash and the deceased had a quarrel
on the day preceding the disappearance of the deceased, and
that Warren Murphy stated to Cash to let him alone and
"we will get him later," or some equivalent remark.  It is
further shown in evidence that there were no revenue offi-
cers in the vicinity at the time that the appellant took the
brother of the deceased to his house and made the state-
ment above referred to about the revenue officers.  The
wife and daughter of the deceased testified that he was at
home the evening of the alleged killing, and that he had
been on the afternoon preceding with a party of people to
a bee tree, and two or three witnesses testified that he
was with them on the said afternoon, and that he left the
swamp before night.  There was also a witness who testi-
fied for the defendant who stated that he spent the night
at Joe Murphy's house, in which it is claimed that the de-
ceased was killed; that he and the deceased slept in the
same room; and that the deceased only went out of the

room that night for a short while, he could not say definitely how long. The house of Caldwell, the witness who testified to seeing the deceased and the defendants together in the car on the evening when the killing is supposed to have occurred, was one hundred and five yards from the public road.

It is insisted that the evidence is insufficient to sustain a conviction, and the case of *Hogan* v. *State* (Miss.) 90 So. 99, is relied on with other cases. We have carefully considered the evidence produced by the state, and weighed it by the rules announced in the *Hogan Case, supra,* and have reached the conclusion that the evidence is sufficient to support the verdct. It is true that there are conflicts between witnesses for the defendant and the witnesses produced by the state, but in the light of the jury's verdict we must assume the facts and circumstances testified to by the state's witnesses to be true. Taking those facts to be established in accordance with the rules on circumstantial evidence, we think the testimony for the defendant presents a case of conflict for the jury's decision, and that we are not authorized to hold that the evidence is insufficient to sustain the conviction.

It is next insisted that instruction No. 4 for the state is reversible error. This instruction reads as follows:

"The court charges the jury for the state that, if they believe from the evidence in this case beyond a reasonable doubt that there was an unlawful agreement between Joe Murphy, Warren Murphy, and Jim Cash, or between Joe Murphy and either Warren Murphy and Jim Cash, to unlawfully take the life of the deceased, and that in pursuance to this conspiracy or agreement the defendants charged in this indictment, or either of them, killed and murdered the deceased as charged therein, then the defendant Joe Murphy is as truly guilty of murder as though he had actually committed the homicide by himself alone."

This instruction is an instruction upon conspiracy and is not intended as a definition of murder. Instruction No. 1 for the state defines murder, and the instructions for

the defendant also give the jury full information as to the necessary ingredients for murder and the degree of proof required to establish it.

It is also objected that the court erred in admitting evidence that the deceased and the defendants engaged in the manufacture of intoxicating liquors. This proof was produced by the state for the purpose of showing motive, and it is supplemented by proof in the record that the defendant stated that the deceased had been talking too much. Whenever the commission of another offense tends to establish a motive for the killing, and where the motive is a material question in issue, it is competent to introduce evidence of another offense which tends to prove motive. It was therefore not error to admit this evidence in this case.

It was also contended that it was error to permit the brother of the deceased to testify to the conversation in jail between Jim Cash and another party in which Cash made incriminating statements against himself and the other defendants. In a case of this kind it is competent to admit such statements because the establishment of appellant's guilt may, and it probably did, embrace establishing the guilt of one of the other defendants who actually committed the crime, appellant being present, consenting, aiding, and abetting therein. It was permissible for the state therefore to establish the guilt of Warren Murphy as the person who actually did the killing, and the appellant's and Cash's guilt as accessories before the fact, or as joint actors, being present aiding and abetting therein. It was also insisted that it was error to not grant a continuance of the case because of the absence of the witness Houston for the defendant, whose testimony would have corroborated other witnesses as to the appellant's presence at home at the time the killing is supposed to have taken place in the swamp. The record does not show whether the witness was served with process, and there was no effort to show in the motion for a new trial the facts by the affidavit of the said Houston, or by his testimony in court,

what facts he really would testify to as required by the rules stated in *Lamar* v. *State,* 63 Miss. 265.

There being no reversible error, the judgment will be affirmed.

*Affirmed.*