JACKSON *v.* STATE.

(In Banc. Nov. 10, 1930.)

[130 So. 729. No. 28795.]

Herbert M. Fant and James McClure, Jr., both of Sardis, for appellant.

**Wm. A. Shipman,** Assistant Attorney-General, for the state.

**Smith, C. J.**, delivered the opinion of the court.

The appellant was convicted of the murder of his wife, and was sentenced to be hanged.

The appellant testified in his own behalf, admitted the killing, and that it was without justification, but claimed that it was done in the heat of passion. The court below refused an instruction requested by the appellant eliminating murder from the consideration of the jury, and another requested by him directing the jury to find him guilty of manslaughter.

The testimony of the appellant himself discloses that the homicide occurred in the house in which he and his wife were living, together with two of the wife's children by a former marriage, one of whom was seven and the other about a year and a half old. The wife was cutting wood with an axe belonging to the appellant, and what then occurred can best be told in the appellant's own language:

"A. I told her not to cut my axe in any nails and she said it wasn't the first G— d— axe she had cut nails with. She went in the house and I stood in the door; and she said she was going to her sister's all night and going home the next day. I reached in my trunk and got my pistol.

"Q. She said she was going to her sister's that night and going home the next day. What effect did that have on you? Did it make you mad?"

After stating that he was angry and did not realize what he was doing, the appellant said that he shot his wife twice while she was "sitting in a chair." On this evidence, it is manifest that the court below did not commit error in refusing to confine the jury to a verdict of manslaughter.

The only eyewitness to the killing other than the appellant, was the decedent's seven year old son, who testified on behalf of the state. No objection to the competency of this witness was made until at the close of his cross-examination, which discloses the following questions and answers:

"Did you have any conversation with Mr. Thompson over there about what would happen to you if you told a lie here in court? Did he tell you where you would go? A. Yes, sir.

"Q. He told you would go to jail? A. Yes, sir.

"Q. And that is the reason you are testifying to this? A. Yes, sir. Objection. Then if the court please, we submit he is not a competent witness and his testimony should be excluded from the consideration of the jury. Objection overruled. Exception."

The appellant now contends that the evidence of this witness should have been excluded for the reason that he was not of sufficient intelligence and did not understand the sanctity of an oath. The examination of the witness included the usual questions as to his attendance at Sunday School and of his knowledge of what punishment he would receive here and hereafter for telling a lie, all of which were beside the mark in so far as it was sought thereby to disqualify the witness on the ground of religious belief, or want of it. "All that is required to qualify a child as a witness is that it should have sufficient capacity to observe events and to recollect and communicate them. In determining its capacity for communication, 'there are two elements to be taken into consideration: (a) There must be a capacity to understand questions put and to frame and express intelligent answers. (b) There must be a sense of moral responsibility, a consciousness of the duty to speak the truth.' 1 Wigmore on Evidence, section 506." Peters v. State, 106 Miss. 333, 63 So. 666. The witness here, whose testimony it will be unnecessary to set out fully, met this test. More-

over, the objection to the competency of the witness was made too late. The appellant's counsel saw the child, and, in answer to the second question propounded to him, the child said he was seven years old. It was the duty of counsel then, if he desired to raise the question, to object to the competency of the witness so that the court might inquire into and decide his competency before he was questioned as to the facts in the case. Counsel should not be permitted, in the absence of a competent excuse therefor, to refrain from objecting to the competency of a witness until after his testimony has been given, for to hold otherwise would permit counsel—though we do not intimate that such was the purpose here—to withhold an objection to the competency of a witness until it should appear whether the testimony given by him was favorable or unfavorable to the party objecting. Carter v. Graves, 6 How. 9; 1 Wigmore on Evidence (1 Ed.), sections 18 and 486; 5 Jones on Evidence (2 Ed.), section 2087. If the court had committed any error in permitting this boy to testify, that error would have been cured by the testimony of the appellant, for there was no material difference between his version of the killing and that testified to by the child.

The appellant's wife was holding her year and a half old child in her arms when she was killed. The district attorney attempted, but was not permitted by the court on objection thereto by the appellant, to prove that this child was powder burned by the shots fired by the appellant. After the court had so ruled, the district attorney again several times sought, but was not permitted by the court, to elicit this testimony from the witnesses. The persistency of the district attorney in attempting to bring out this evidence is said to have been prejudicial to the appellant, in that it might have influenced the jury in determining the penalty to be inflicted, for which reason the judgment of the court below should be reversed. We are not here concerned with the competency of this evi-

dence, and will assume that it was incompetent and properly excluded by the court. The district attorney should have, of course, observed the rulings of the court, as should all attorneys engaged in the trial of a case; and a continued violation by an attorney of such rulings subjects him to the disciplinary power of the court, but does not usually necessitate the reversal of a judgment, and no necessity exists here. The defendant himself stated that his wife was sitting in a chair with the ''baby in her lap'' when he shot her, and that the jury may have received the impression from the questions propounded to other witnesses by the district attorney that the child was powder burned could hardly have added to the burden which the appellant, without it, was compelled to carry.

The judgment of the court below will be affirmed, and the sentence will be executed on Thursday, December 18, 1930.

Affirmed.