CHURCH v. STATE.

(Division B. Oct. 10, 1938. Suggestion of Error Overruled Oct. 24, 1938.)

[183 So. 525. No. 33232.]

W. T. Weir, of Philadelphia, for appellant.

804

· **W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGehee, J.,** delivered the opinion of the court.

This is an appeal from the Circuit Court of Neshoba County, wherein appellant, Mrs. Maggie Church, was tried for the murder of her husband, George Church, and was convicted of manslaughter and sentenced to serve a term of ten years in the penitentiary. Mrs. Church was jointly indicted with her son, a minor, for this crime, and he was thereafter sent to the Mississippi Industrial and Training School at Columbia, Mississippi. On a former trial, the appellant was convicted of murder and her case was appealed to this Court. Whereupon, the cause was reversed for a new trial, the decision being reported in 179 Miss. 440, 176 So. 162.

George Church was found dead on his front porch by some of his neighbors on the morning of the 1st day of May, 1936, with a deep knife wound extending from near the center of the back of his neck to almost around his throat, and which had severed the jugular vein. The sheriff and others, on going to the house, found that blood stained tracks made with bare feet lead from a large bloody spot on the floor in the front bedroom out through the front door and to the point where the body was found. That a sewing machine was opposite the foot of the bed in this front room, and the large quan-

tity of blood spilled on the floor was between the foot of the bed and the sewing machine. An opened and blood stained razor was found on the machine. There was a pocket knife lying near one of his hands on the front porch. His wife and his seven children were not at home; she was found at the home of one Oscar Tingle, a near neighbor. It was the theory of the State that the appellant, with the assistance of her son, committed the homicide; that an altercation and fight occurred between them, growing out of jealousy on the part of the deceased because of the attentions of other men, especially Tingle. Upon being informed, at the home of Tingle, of the death of her husband, the appellant replied: "Yes, I knew he was going to kill himself for he said he was." She was then informed that there was a great deal of blood on the floor at their home. Her explanation was that they had been in a row and that her husband had chased her with a hickory stick nearly to the Tingle home and then turned and went back, but she then contended that she had shed the blood on the floor when he struck her with the stick before she ran from the house. A diligent search was made by several of the witnesses for the stick in question, but none was found about the premises or along the route to the Tingle home.

Thereupon, the appellant was placed in the jail at Philadelphia and her son in the jail at Louisville. On the next day, the officers obtained a written confession from the son, William Church, at Louisville, to the effect that the appellant and George Church had a difficulty on the night before on account of her alleged relationship with Tingle, and that his father had struck the appellant with a stick, and that he thereupon held his father while the appellant cut his throat. This written statement was approved on the next day by the appellant as being correct, with the exception that she denied that William held his father and that she cut him. A few days later, however, he recounted the facts of the killing in her presence, and after she had first denied

that she had cut the deceased, William stated to her, "Mamma, you know you did, there is no use denying it," when she replied, "Yes, I cut him, but I did not aim to kill him." The written confession of William, as finally sanctioned and approved in its entirety by the appellant, was introduced against her by the State, along with her own independent and subsequent voluntary confession to the effect that 'I didn't cut my husband to kill him, but I had to do something to protect my children and myself. He said he was going to kill all of us. I did it in self defense . . . etc. . . . The razor was all that I could get to keep him from killing us. I was protecting the children and myself. I didn't want to kill him, but I had to stop him or get killed."

The introduction of this confession of her son was objected to by the appellant as being incompetent against her. We think, however, that the confession was competent on two grounds: First, the substance of the written confession was reiterated orally by the son in the presence of his mother, the appellant, and the statements therein contained were not denied; second, the approval by the accused of the correctness of the statements embodied in the confession was equivalent to adopting it as her own confession. On the first ground, it was admissible under the principle announced in the cases of Kendrick v. State, 55 Miss. 436; Spivey v. State, 58 Miss. 858; Miller v. State, 68 Miss. 221, 8 So. 273; Murphy v. State, 129 Miss. 634, 92 So. 694.

It is next urged that the court erred in admitting the testimony as to an improper relationship between the appellant and Tingle. However, this testimony was competent as tending to show a motive for the crime. See Bateman v. State, 64 Miss. 233, 1 So. 172; Ouidas v. State, 78 Miss. 622, 29 So. 525; Mooreman v. State, 109 Miss. 848, 69 So. 1000; Sauer v. State, 166 Miss. 507, 517, 144 So. 225.

It is further assigned as error that the county prosecuting attorney, in his argument to the jury, referred

to the fact that a witness for the State had testified that he heard the deceased cry out, "Turn me loose, turn me loose, turn me loose," and further said in his argument that "This is undisputed in the case." In the case of Drane v. State, 92 Miss. 180, 45 So. 149, the argument there objected to was "Nobody on earth has denied what Lawrence Latham said about this." The court said that there were other witnesses who could have denied Latham's story aside from the defendant, and that such argument was therefore not a comment on the failure of the accused to testify. Neither do we think that this reference to the testimony in the present case constituted a comment on the failure of the defendant to testify, under the rule announced in the following cases: Johnson v. State, 109 Miss. 622, 68 So. 917; Winters v. State, 142 Miss. 71, 107 So. 281; and Baird v. State, 146 Miss. 547, 112 So. 705.

Finally, it is argued that a witness for the State should not have been permitted to testify as to the substance of the remarks made by appellant to the effect that the blood on the floor was her blood, unless the witness could state all that was said. We concede the rule to be that when a part of a conversation is testified to by either party, the other is entitled to bring out the remainder of the conversation. See Brown v. State, 85 Miss. 511, 37 So. 957; Flowers v. State, 85 Miss. 591, 37 So. 814; and Collins v. State, 148 Miss. 250, 114 So. 480. The appellant was not denied this right.

We are of the opinion that no reversible error was committed on the trial in the court below, and that the case should be affirmed.

Affirmed.