THOMAS *v.* STATE.

No. 39389 December 13, 1954 76 So. 2d 242

*T. J. White,* Gulfport, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

LEE, J.

Lula Mae Thomas was convicted of manslaughter in the Circuit Court of Harrison County, and from a sentence of five years in the state penitentiary, she appealed.

She complains of errors in the admission of (1) the testimony of Joseph Lee Dread, and (2) a purported dying declaration.

When Joseph Lee Dread, a son of the deceased, Josephine Dread, was offered as a witness for the State, the

court conducted a preliminary examination and adjudged him to be competent. The questions and answers revealed that he was eight years old and in the third grade when the killing occurred, and that he was nine years of age and in the fourth grade at the time of the trial. He had been attending Sunday School and had learned that the Bible says one should tell the truth. While he said that he did not know the meaning of an oath, he also stated, that if one did not tell the truth, he would be sent to jail. His testimony was to this effect: He had been playing in the street and had gone into the house, where his mother was cooking supper. Lula Mae Thomas, on the outside of the house, came up to a window, and his mother told her to quit looking in the window. Thereupon Lula Mae said she wanted to show Josephine a picture. Both of the women then walked to the front where Lula Mae immediately stabbed his mother several times. He ran into the street and hollered. After Josephine had been stabbed, she picked up a board, but did not strike Lula Mae.

 The boy's narrative of the circumstances in connection with the killing was clear, straight forward and coherent. It showed that he possessed the capacity and ability "to observe events and to recollect and communicate them, and * * * to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth." Yarbrough v. State, 202 Miss. 820, 32 So. 2d 436; Jackson v. State, 158 Miss. 524, 130 So. 729. In the former case the evidence of a girl, five years and four months old at the time she testified, was held to be competent, as was likewise the evidence of a seven year old boy in the latter case. There was no error in admitting this evidence.

An undertaker picked up the wounded woman at the scene of the stabbing. She was bleeding from wounds on her arms and in her chest. One-half of the subclavian artery had been severed. He carried her to the hospital in an ambulance. On the way he passed a po-

lice car in which George T. Davenport, a policeman, was patrolling, and who turned the police car around and followed. In the emergency room at the hospital he talked to Josephine and inquired if she wanted to make a statement. Her reply was that she did. "She said she was going to die" and "She said she was dying." Then, "She gave me the name of Lula Mae Thomas as the one that cut her. She said that Lula Mae walked up to her window, showing her a picture through the window. She was in the back, cooking. She wanted her to come out and look at the picture. She walked out the front of the house and Lula Mae came around the side and started cutting her with a knife.

"I asked her if she had any kind of weapon. She said she had none. She didn't have a thing in her hand when she walked out the door."

The witness testified that the declarant, following the above statement, died immediately, although the doctor, who came in evidently just after the declaration, testified that she was unconscious when he arrived and lived about ten minutes thereafter. It is understandable that a layman, upon seeing an injured person lapse into unconsciousness, might honestly believe that such person had died, when in fact respiration and circulation might continue for a brief period of time.

 The police officer, in relating to the court and jury the words by which the declarant expressed her realization and solemn sense of impending danger, used indirect rather than direct discourse. "She said she was going to die" and "she said she was dying," if transposed to direct discourse, would be equivalent to, "She said 'I am going to die,' " and "She said, 'I am dying.' " Such statements were sufficient to show that the declarant realized that the solemn hour of her death was at hand. She was in fact dying because within ten minutes she was actually dead.

But, because the officer said she died while, and before she completed, talking to him, it is argued that, if her statement had been completed, she might have also said that she was assaulting the appellant with a board, in corroboration of appellant's self defense theory. The policeman's opinion that she died before she had finished talking likely sprang from his purpose and intention to ask additional questions in connection with some of the details. So far as the material facts of the stabbing were concerned, her narrative was complete. It showed that, at a time when she was without blame and had no means with which to defend herself, she was stabbed to death by the appellant. It established the identity of her killer and related the attendant circumstances. It was clear and concise and showed that she knew what she was saying. If she had lived, obviously she could have testified to the same effect in a prosecution for assault and battery. The proof conformed to the rule which has been adopted in Lipscomb v. State, 75 Miss. 559, 23 So. 210, and Dean v. State, 173 Miss. 254, 160 So. 584.

The appellant's version, if believed by the jury, would have warranted justification on the ground of self defense. The disputed issue of fact was, of course, for the jury, and there was ample evidence to sustain the verdict.

There is no prejudicial error in the record and the cause must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.