ROBINSON *v.* STATE

No. 41089 January 26, 1959 108 So. 2d 583

*Jack M. Greaves, Josephine Hood,* Canton, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, J.

Henry Robinson was indicted for, and convicted of, the murder of his wife, Dorothy Jean Robinson. The jury fixed his punishment at imprisonment in the state penitentiary for life, and, from the judgment entered thereon, he appealed.

About the middle of Saturday morning, February 1, 1958, Robinson, accompanied by his stepson L. T. Harris, of the age of two years five months and twenty-eight days, appeared at the office of the sheriff of Hinds County, at Jackson, and reported that someone had stuck a gun through the window, and killed his wife. A deputy, L. M. Garrett, on his way to the scene, ascertained that the location of the killing was in Madison County. He therefore got in touch with the sheriff's office at Canton and Billy Noble, a deputy sheriff, joined the Hinds County officer, near Ridgeland, and they went immediately to the scene.

Upon entering the Robinson home, the body of Dorothy Jean Robinson was lying just inside the open door. She was dressed in ''Sunday-go-to-meeting'' clothes. She had been shot at close range in the back of the neck, with parts thereof splattered on the door. The bed in the room had been made up. The table indicated that someone had eaten breakfast. Two pieces of fried bologna remained in the skillet. A 12 guage single barrel shotgun was propped against the wall opposite the door, and the discharged shell had not been ejected. It had rained the night before and the yard was muddy. Two sets of boot tracks were evident, leading from and to the house. There was also a loafer type shoe track leading away from the house. Robinson's boots, in the house, matched the boot tracks in the yard leading out and in. When the officers first saw Robinson, he was wearing a pair of dress pants, an overcoat, and dress shoes. The shoes, which he had on, matched the shoe tracks in the yard.

The defendant had told the officers that when he got up that morning, he went to cut some wood for the pur-

pose of making a fire to cook breakfast. At the time, he wore khaki pants. He identified a pair of such trousers, lying on the baby bed, as the ones which he wore at that time. When the cuffs were emptied, a number 6 shot fell out. Other shots of the same number were in the wall and on the floor by the body. Three of such shots were taken out of the door. No panes were out of the windows, which were nailed at the top and could not be opened. Only the front door was not securely fastened.

Robinson had also told the officers that, after he returned to the house with the wood, he and another Negro, Willie Thomas, went to a nearby store and purchased some whiskey; that, as he came back, his stepson was on the porch crying; that he ran into the house immediately and found his wife on the floor dead; and that somebody had killed her with his gun.

In the absence of the jury, officer Noble testified that he asked the little boy, L. T., at the house, in the presence of the defendant, if he knew who shot his mother and the child replied, ''Daddy shot mother dear'', at the time raising his arms like he was pointing a gun and saying ''Bang''; that the boy was looking at Robinson and that the defendant made no vocal denial. The witness at the time was of the opinion that the boy was about 3 years old and was normal in intelligence and seemed to know what he was saying. From his investigation, he found out that the boy called his mother ''mother dear''. The trial judge asked the witness about the accusation, and, when ''the child said that Henry killed his mother, or words to that effect, did Henry make any statement to that?'', and the answer was, ''No, sir''. Again the judge asked, ''and did he ever deny then that he killed his wife?'', and the answer was ''He just sat there and shook his head. He never opened his mouth''. The court held that this evidence was admissible, and defense counsel took exceptions thereto. The jury was returned to the box, and this evidence was offered to the same effect, ex-

cept that the officer said that Robinson made no vocal denial at the time, and did not say anything about the shaking of the head. However, he told about a second accusation at the home of the defendant's sister-in-law, in which he said that the defendant, while making no vocal objection, "sat there and shook his head", but at the same time the defendant "told his wife's sister that he had come home and found Dorothy Jean, or whatever he called her, he had found her dead."

Willie Thomas, who lived the equivalent of several blocks from Robinson's home, testified that the defendant, wearing khaki clothes, came to his house that morning to borrow an axe to cut wood; that later he came back and they went to a store and purchased some whiskey; that they separated about 10:30 that morning; that Robinson left his car at the gap because it was too muddy to drive it up to the house; that when he returned about 12:00 o'clock he saw neither the defendant nor his car; and that he knew of no person at the house that morning other than Robinson.

Cora Lee Ford and Lewis Ford, the sister and the father of the deceased, testified that the defendant, one and two weeks, respectively, before the killing, threatened to kill the deceased.

The defendant testified for himself that he got up early that morning and went to the home of Willie Thomas to borrow an axe; that he cut wood, took it to the house, made a fire, and told his wife to cook breakfast and get herself and the boy ready; that he would be back shortly and they would go to town; that he returned the axe and he and Thomas went to a store and bought two eighths of whiskey, but that he drank only one swallow; that, when he got back, the little boy was standing on the porch crying, and that his wife was dead; that he picked up the gun and saw that the shell had been fired; and that he took the boy and hurried to Jackson to report it to the sheriff's office. He further testified that L. C. Harris was the father

of the boy; that the father had been to his house twice; that the child called L. C. "Daddy"; and that he never called him anything but "Henry". He said that he made no denial of the boy's statement because he did not hear the boy charge him with killing his mother. He further denied that he ever threatened his wife, saying, to the contrary, that they got along fine.

The sole question on this appeal is whether or not the statement of the little boy constituted an accusation, which the defendant was called on to deny, and if so, whether or not he in fact made a denial.

The appellant contends that the admission of this statement was highly prejudicial and constituted reversible error, because, he says, in effect that (1) the child did not have sufficient capacity to testify as a witness, and (2) the statement did not charge him with the crime, but that, if so, he shook his head, showing a denial thereof, and that the failure to make a vocal denial, under the circumstances, did not amount to an admission of guilt by silence.

22 C. J. S., Criminal Law, Section 734a(1), pp. 1258-9, says: "Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is relevant as tending to show his guilt; and the accusatory or incriminating statement is admissible, not as evidence of the truth of the facts stated, but to show accused's admission by silence." See also page 1260 thereof as follows: "It is, of course, necessary for the state to show affirmatively that accused stood mute or failed to deny the statement before it is admissible as an admission of the truth of the statement by silence."

This doctrine of the admission of guilt by silence is settled beyond question in the jurisprudence of this state. Kendrick v. State, 55 Miss. 436; Spivey v. State, 58 Miss. 858; Miller v. State, 68 Miss. 221, 8 So. 273; Murphy v. State, 129 Miss. 634, 92 So. 694; Anderson v. State, 171

Miss. 41, 156 So. 645; Church v. State, 182 Miss. 802, 183 So. 525; Page v. State, 208 Miss. 347, 44 So. 2d 459; Character v. State, 212 Miss. 30, 53 So. 2d 41; Thurmond v. State, 212 Miss. 36, 53 So. 2d 44.

■■ ■ A youthful witness, in order to be competent, must be shown to possess the capacity and ability "to observe events and to recollect and communicate them, and * * * to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth." Thomas v. State, 222 Miss. 488, 76 So. 2d 242; Yarbrough v. State, 202 Miss. 820, 32 So. 2d 436; Jackson v. State, 158 Miss. 524, 130 So. 729. ■■ "Testimony of a child of tender years should be admitted with great caution, however; and where there is doubt, it should be excluded." 97 C. J. S., Witnesses, Section 58, pp. 451-2. Cf. Smith v. Illinois Central R. Co., 214 Miss. 293, 58 So. 2d 812.

Some of our cases in which youthful witnesses have been permitted to testify, including their respective ages, are as follows: Trim v. State, (Miss.) 33 So. 718, a little over 5 years; Peters v. State, 106 Miss. 333, 63 So. 666, 6 years of age; Fairley v. State, 152 Miss. 656, 120 So. 747, 4 years of age. (In this case, while no preliminary examination was conducted, it was held that this omission did not constitute reversible error); Jackson v. State, supra, 7 years of age; Anderson v. State, 199 Miss. 885, 25 So. 2d 474, 11 years of age; Yarbrough v. State, supra, 5 years and 2 months of age; Thomas v. State, supra, 8 years of age.

The little boy, in this case, if he was telling the truth, was an eye witness to the killing; and, if he was competent, could have testified as a witness in the trial. He was not offered as a witness. The reason why he was not offered is obvious: Counsel for the State evidently knew that he did not possess the requisite capacity and ability, as stated above.

■■ ■ However it is not necessary, in all instances, that the accuser shall possess the same competency, requisite of him, if offered as a witness in court. See discussion under note 31 at page 1259 of 22 C. J. S., Witnesses, Section 734, supra.

In State v. Claymonst, 114 Atl. 155, a New Jersey case, Claymonst was convicted of the rape of a 4 year old girl. He had been taken to the bedside of the child, who, in the presence of witnesses, identified him as the person who committed the assault upon her. Several of these witnesses testified to the child's identification, and that the defendant said nothing when she pointed him out. The Court held that the child was too young to understand the sanctity of an oath and excluded her as a witness. For that reason, the defendant maintained that her statement identifying him as the assaulter, should have also been excluded. But the Court held that the evidence of the witnesses as to the child's accusation, in the absence of a denial, was properly admitted.

In Hardy v. State, 136 N. W. 638, a Wisconsin case, a girl between 7 and 8 years of age was raped. Her twin brothers, of the age of 6 years, were offered as witnesses, but, on examination by the court, they stood aside and did not testify. The mother testified that, when the defendant was brought into the store in the presence of one of the twins, the boy said "that is he". The father testified that the other twin, in answer to a policeman, stated in the presence of the defendant, that the defendant was the one who showed him the "little cats." The Court said that the evidence tended to show that the defendant made no denial, and that "he said nothing, but looked down". The opinion, in sustaining the admission of this evidence, said: "The evidence as to how the defendant acted when accused by the children would justify the jury in believing that such acts indicated a consciousness of guilt", and that such evidence, of course, was admissible.

■■ ■ The attention of the Court has been called to no case in this State where a child, under the age of 4 years, has been permitted to testify as a witness, nor in any case where the accusation of a child, under that age, has been accepted as a basis for invoking the doctrine of guilt by silence. The vagaries and illusions of childhood are oftentime bizarre. When this fact of nature is kept in mind, this Court cannot, in the administration of justice, permit the accusation of a child only two and half years of age to serve as a basis for upholding an admission by silence.

In addition to what has already been said, the evidence was not sufficient to establish beyond reasonable doubt that the child actually accused Robinson of killing his mother. Assuming that the expression ''mother dear'' referred to his dead mother, the proof was not sufficient to establish that ''Daddy'', to the witness, was in fact Robinson. The appellant was his stepfather. The mere fact that the boy was looking at Robinson, while the statement was being made, is in no way conclusive that he was charging his stepfather with the commission of the dastardly deed. On the contrary, the appellant testified positively that the child called him ''Henry'', and that the boy called his real father ''Daddy''; and for that reason, he did not understand that the child was accusing him of the killing. The trial judge, in his questions to the state witness, was informed that, while the appellant made no vocal denial, he in fact ''just sat there and shook his head''. At the time of reporting the homicide to the officers and during the investigation, the appellant, all of the time, was protesting that he had had nothing to do with the killing of his wife; and even after the officers had taken him to his sister-in-law's home and the little boy again said that ''Daddy shot mother dear'', the appellant immediately told the sister-in-law that he had come home and found Dorothy Jean dead, which state-

ment clearly amounted to a denial, if the little boy was actually charging him with the crime.

■■ Under the evidence in this case, the State did not show affirmatively that the statement charged the appellant with the crime. Neither did it show affirmatively that he stood mute or failed to deny the statement. Both of these elements must exist before the statement is admissible as an admission of the truth of the statement by silence.

Manifestly the statement of this child should not have been admitted. It could have been, and very probably was, highly prejudicial. For the error in that regard, the cause must be reversed and remanded for new trial.

Reversed and remanded.

*McGehee, C. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.