[Crim. No. 12314.   Second Dist., Div. Four.   May 22, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK BROWN. Defendant and Appellant.

Frank Brown, in pro. per., Gilbert W. Boyne and Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, George J. Roth and Bradley A. Stoutt, Deputy Attorneys General, for Plaintiff and Respondent.

FILES, P. J.—A jury found defendant guilty of incest (Pen. Code, § 285) and he hás appealed from the judgment.

The People's evidence consists solely of the testimony of the victim, defendant's 17-year-old daughter Ruthie, and of defendant's wife, who is Ruthie's stepmother. The defense consists only of the testimony of defendant.

Ruthie's testimony includes the following: On Sunday night, September 5, 1965, she was at home with defendant and her two stepsisters, aged eight and five. Defendant's wife was in a hospital with her child born September 4, 1965. About midnight or 1 a.m. defendant asked, " 'Are you going to give me some tonight?' " Ruthie replied that she couldn't "because the doctor had told me that I couldn't have any more sexual relations because I had a, a Tubbal [sic] disease, something like that." Defendant pulled her into the bedroom and started taking off her clothes. Then her 15-year-old cousin Ivory came to the door of the house. Defendant went to the door and, after Ivory left, defendant returned to the bedroom. He undressed himself and started to undress Ruthie. She started to cry. The 8-year-old stepsister entered the room, but defendant hit her with a broom handle and made her go back to bed. Then he returned to the bed and after further protests from Ruthie he completed the act of intercourse. She cried and he drew his fist back and told her if she did not shut up he would hit her.

On Monday, September 6, Ruthie's stepmother returned from the hospital and, on the following Friday, Ruthie told her what had happened. About September 18 or 19 Ruthie went to the police. Ruthie testified on direct examination that her father had been having sexual relations with her for seven or eight years. She recalled an occasion in July 1965 when she was crying and he pulled a knife and told her if she did not shut up he would use it.

On cross-examination Ruthie testified she had never before complained to anyone except her father about his acts. On redirect she said she had not complained "Because he told me if I did he would kill me."

The stepmother testified that Ruthie had told her about this offense after her return from the hospital, and she had called the police. She said she could not remember the date when Ruthie made the complaint but "I think my baby was about three weeks old."

Defendant, testifying on his own behalf, denied having had intercourse with Ruthie at any time. He recalled that, on the

night of September 5, Ivory had come to the door, stayed briefly, and left. Defendant described three recent incidents which had caused Ruthie to be angry with him. In August 1965 she had wanted to marry a sailor, but defendant had forbidden it. On October 4 (the day before defendant was arrested) she had taken a $44 check out of the mailbox, cashed and spent it, and he had reprimanded her. In June 1965 defendant had compelled her to quit a job as a waitress.

Those three incidents had been called to Ruthie's attention in defendant's cross-examination of her. She had admitted that the events had occurred, but denied that she had been angry towards her father.

The case presented a square issue of credibility. If the trial was fairly conducted, the verdict of the jury is conclusive on the factual issue. (*People* v. *Daugherty*, 40 Cal.2d 876. 885 [256 P.2d 911].) Several claims of error will be discussed separately.

Defendant contends that it was error to receive the testimony of Ruthie that he had committed incest repeatedly over a period of seven or eight years, citing *People* v. *Stanley*, 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913]. That point is not available to defendant because he made no objection to this evidence in the trial court. Ordinarily a defendant may not silently allow evidence to be received in the trial court and then raise the point for the first time on appeal to obtain a new trial.

In this trial, when Ruthie claimed that her father had been attacking her for years without anyone else finding out about it, the defense found an additional basis for arguing that her story was unworthy of belief. The defense attorney then was in a position to argue that it was improbable that defendant could have carried on in this way for so long without being discovered and without Ruthie's ever having mentioned it to anyone. Defendant's choice of tactics, in allowing the evidence to be received, cannot be grounds now for demanding a new trial.

Defendant contends that in any event the court erred in giving the following instruction requested by the People:

"Although evidence was offered for the purpose of showing that on more than one occasion the defendant indulged in acts of sexual intercourse with his daughter Ruthie Mae Brown, you are not permitted to deliver a verdict of guilt in this case unless you find that the defendant committed the specific offense which, the prosecution alleges, was committed on or about September 5, 1965.

"Evidence of any other incestuous conduct by the defendant may be considered by you only as, and for the sole purpose of, tending to show, if it does, the incestuous disposition of the defendant toward the said daughter and for whatever bearing it may have on the question of the intent of the defendant at the time of the alleged commission of the offense for which he is here on trial."[1]

The tenor of the instruction, read as a whole, was to limit the effect of the evidence of the other crimes, and particularly to warn the jury not to convict unless it found defendant had committed the one offense which had been charged. To this extent the instruction benefited defendant. The second part of the second sentence referring to the "question of the intent" was harmless because there was no such question in the case. There remains to be considered the effect of the portion which tells the jury it may consider the evidence "only as . . . tending to show, if it does, the incestuous disposition of the defendant."

In *People* v. *Stanley,* 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913], a conviction for sex offenses was reversed upon the ground that the trial court had permitted the victim to testify that the defendant had committed similar acts against him in the past. The opinion pointed out that, where the sole issue was credibility, the testimony of the victim as to other offenses added nothing to the strength of his testimony; and thus the prejudicial effect outweighed its legitimate probative value. The *Stanley* decision does not hold that such evidence lacks relevance. The court said (at p. 816): "In cases involving sex crimes, it has been held that evidence of other not too remote sex offenses with the prosecuting witness is admissible to show a lewd disposition or the intent of defendant towards the prosecuting witness."

It was the relevance of the other offenses in showing the defendant's lewd disposition which made that kind of evidence prejudicial in *Stanley*. That case held that the victim's testimony as to prior offenses, though relevant to prove the defendant's disposition, was not probative to bolster the credibility of the prosecuting witness.

Without any instruction on the subject, a jury would recognize that prior acts of incest would tend to show an incestuous disposition. Since the evidence was before the jury by reason of defendant's failure to object, defendant could not have been prejudiced by an instruction which told the

---

[1] Exact copy of CALJIC No. 574, except adaptations.

jury it could consider the evidence only for that single purpose.

In cross-examining Ruthie, defendant's attorney asked "Well, you have had intercourse with boys, have you not?" An objection was properly sustained. *People* v. *Stratton* (1904) 141 Cal. 604 [75 P. 166] is squarely in point. That was an incest case where an objection to such a question had been sustained by the trial court. The Supreme Court said (at p. 607) : "The ruling was proper. The admission of the evidence would in no way have tended to disprove the charge. Her reputation, and indeed her character for chastity and virtue, were not material, and, as is said in *State* v. *Winnenham*, 124 Mo. 423 [27 S.W. 1107], 'Even that she was a prostitute would not have excused or mitigated his offense.' "

Defendant's argument now is that the *Stratton* decision has been superseded by the reasoning of the Supreme Court in *People* v. *Pantages* (1931) 212 Cal. 237, 262 [297 P. 890]. That decision reversed a conviction for statutory rape of a 17-year-old girl. (Pen. Code, § 261, subd. 1.) Although it was not necessary in that case for the People to prove the use of force, the victim had testified that the defendant had used force. The trial court rejected all offers of the defense to prove the prior unchastity of the victim. The Supreme Court adopted the opinion of the District Court of Appeal which reasoned (a) it is " ' ' "more probable that a woman who has done these things voluntarily in the past would be much more likely to consent, than one whose past reputation was without blemish, and whose personal conduct could not truthfully be assailed," ' ' " (b) therefore proof of prior unchastity tends to impeach the testimony that force was used, and (c) impeaching the prosecutrix' testimony regarding the use of force tends to undermine her credibility on all matters.

That process of reasoning cannot be used in an incest case because the first proposition does not apply. The moral and social barriers against incest are quite distinct from those pertaining to fornication generally. There is no basis for assuming that a girl who has engaged in "intercourse with boys" is any more disposed than other girls to consent to incest with her father. The *Pantages* theory cannot be held to have supplanted the rule of the *Stratton* case.

Defendant argues that his trial attorney was unfairly restricted in cross-examination of the defendant's wife, but the argument he makes is not supported by the record.

Defendant's wife testified that, during the week preceding the trial, defendant telephoned Ruthie and said "he wanted

her to drop the charges." Except for that generalization, the conversation was not stated. On cross-examination the witness was asked "About the girl dropping the charges. Isn't it true that he has always asserted that he wasn't guilty of that charge?" An objection to this question was sustained.

Defendant's appellate attorney now charges that the trial court excluded "testimony of appellant's complete conversation with the alleged victim." The record does not so indicate. The question asked on cross-examination was whether defendant "always asserted" his innocence. The witness was never asked what was said in the conversation referred to in direct examination. Defendant himself was unable to contribute anything on this subject because, according to his testimony, he had not spoken to his daughter after his arrest.

■ There is no merit in defendant's argument that his wife was not a competent witness against him. The applicable statute is former Penal Code section 1322[2] which provided: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except . . . in cases of criminal violence . . . upon the child or children of one by the other. . . ."

In the first place, there was no objection to the wife's testimony at the trial, so defendant is not entitled to raise the issue on appeal. (*People* v. *Moten,* 207 Cal.App.2d 692, 695 [24 Cal.Rptr. 716].)

In the second place, the word "violence" in this statute includes any use of physical force, and hence applies to any criminally lewd act upon the body of the witness' child. (*People* v. *James,* 9 Cal.App.2d 162 [48 P.2d 1011]; *People* v. *Kasunic,* 95 Cal.App.2d 676 [213 P.2d 778]; *People* v. *Gibson,* 152 Cal.App.2d 149, 153 [312 P.2d 705].) *A fortiori,* a prosecution for incest falls within the statutory exception. A stepchild of the witness is within the protection of the statutory exception. (*People* v. *Vera,* 131 Cal.App.2d 669, 672 [281 P.2d 65].)

■ Defendant contends that the trial court lost jurisdiction to sentence him. He points out that, following the conviction (which occurred on February 2, 1966), there was a hearing on February 21, resulting in the following minute order:

"Waives arraignment for judgment. Motion new trial

[2]Repealed effective January 1, 1967, and superseded, in part, by Evidence Code sections 970-973 and 980-987.

denied. Proceedings suspended. Doctors Harold C Deering, K Grosvernor Bailey and J M Nielsen appointed under 5504 Welfare and Insitutions [sic] Code. Further proceedings continued to March 14, 1966 at 9 A M. Remanded.''

On March 14 defendant was arraigned for judgment, probation was denied, and sentence was pronounced.

As defendant says, the minutes of February 21 indicate that the court must have intended to institute civil proceedings looking to the commitment of defendant for treatment as a mentally disordered sex offender under Welfare and Institutions Code section 5500 et seq. When such proceedings are begun, the criminal proceedings are suspended, to be reinstituted when and if the civil proceedings are terminated.

The doctors who were appointed on February 21 must have filed reports because the court and counsel mentioned them in the discussion on March 14. Apart from that there is no indication that the civil proceedings provided for in the Welfare and Institutions Code were ever actually begun. It was discretionary with the court whether to entertain a civil commitment proceeding against defendant (Welf. & Inst. Code, § 5501, subd. (a)); and it does not appear that either the court or defendant wished that course followed.

Although the trial judge neglected to state for the record on March 14 that the suspension of proceedings, ordered on February 21, had been vacated or terminated, that was the necessary effect of his action in going ahead with the criminal proceedings on March 14. In *Thurmond* v. *Superior Court,* 49 Cal.2d 17 [314 P.2d 6], the petitioner had been convicted of a penal offense and then committed civilly under section 5500 et seq. of the Welfare and Institutions Code. Thereafter he made a motion for a new trial in the criminal case, which motion was heard and denied. In holding that petitioner was entitled to appeal from the latter ruling, the Supreme Court said (at pp. 20-21) : ''The fact that the court adjourned the criminal proceedings does not mean that an express order of reinstatement was necessary before the court could pass upon Thurmond's motion for new trial. When the court heard the motion and denied it on the merits, it obviously reinstated the criminal proceedings to the extent required to consider the motion. While an express order to this effect would have been preferable, it was not essential since it was necessarily implied from the court's action in considering the motion on its merits.''

In the case at bench defendant participated without objection in the arraignment for judgment; and defendant's attorney, when asked if there was any legal cause why judgment should not be pronounced, replied "No legal cause." Upon this record, the failure of the trial court to record formally the reinstatement of the criminal proceeding is an irregularity which did not prejudice the defendant.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 17, 1968. Peters, J., was of the opinion that the petition should be granted.