495 So.2d 486 (1986)
Jordan J. BANDY
v.
STATE of Mississippi.
No. 56510.
Supreme Court of Mississippi.
September 24, 1986.
Rehearing Denied October 29, 1986.
*487 Dale Robinson, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
On February 4, 1985, Jordan J. Bandy was convicted in the Circuit Court of Harrison County of a violation of Miss. Code Ann. § 97-5-23 (Laws, 1980, ch. 387, current version at Supp. 1985), (also known as the "Fondling Statute.")
After the jury's verdict was returned, the court held a hearing to determine whether Bandy should be sentenced as a recidivist, under Miss. Code Ann. § 99-19-83 (Supp. 1985). The trial judge reviewed Bandy's two prior convictions: 1) an Iowa conviction of assault with intent to commit sodomy, for which Bandy received a five (5) year sentence; and 2) a Texas conviction of indecency with a child, for which Bandy received a 10 year sentence. Finding that Bandy had served over two (2) years in Iowa, and six (6) years in Texas, and that the assault charge was one of violence, per se, the court sentenced Bandy to life imprisonment without the possibility of parole.
Bandy has assigned the following six errors to the trial court:
1. The punishment was not founded upon a proper indictment for enhancement.
2. The proof of prior convictions for enhancement did not sustain the charge.
3. Mississippi Code Annotated 99-19-83 (Supp. 1981) is prohibited by the Eighth Amendment.
4. The jury was not fully instructed.
5. The State failed to prove beyond a reasonable doubt all the elements of the crime.
6. The verdict is contrary to the law and the evidence.
On January 8, 1984, five year old L.H. was playing Atari with her father in the game room of the Harbor Square Apartments in Gulfport, Mississippi, just before noon. Upon finishing their game, they raced upstairs to their apartment  L.H.'s father taking the elevator, and L.H. taking the stairs. Her father reached their second-floor apartment first, and told her mother that L.H. would be up shortly. In *488 the meantime, the apartment manager, James Bandy (no relation to the defendant) arrived at the child's apartment to borrow a diaper for his nephew. L.H.'s mother went to the back of the apartment to fetch a diaper, and, when she went back to the door of their apartment, looked out in the hallway for L.H., who had not yet arrived. She spotted L.H. at the end of the hallway, about sixty (60) feet away, at the door of the defendant's apartment.
Jordan Bandy had his arm around the child's arm and waist. Her mother watched him give her daughter some money, then he lifted her dress and put his hand inside her panties  in the back, then in the front. According to the child Bandy rubbed her vaginal area. When she realized what was happening, her mother called a visiting neighbor, to the door. After she saw Bandy's hand in her daughter's panties, her mother screamed for her and went running down the hall toward Bandy. James Bandy, the apartment manager, grabbed L.H.'s mother and told her to call the police. L.H. broke away from Jordan Bandy and ran to her mother.
Officers Charles Rogers and Dale Titler of the Gulfport Police Department arrested Bandy at a convenience store near the apartments a short time after the incident. Bandy had a beer in his hand when he was arrested, and the officers testified that they could smell alcohol on his breath. According to Officer Rogers, Bandy made a statement in the police car on the way to the station. He admitted, according to the statement, "that he had kissed [L.H.] twice, once being on the mouth. He has also placed his hands on her vagina and her legs and her buttocks...."
At the police station, Bandy signed a waiver of rights and made another statement, which was taped. Apparently, the taping got off to a false start after the policemen discovered that the tape was not functioning; one of the officers left the room for a few seconds and got another tape and another tape recorder. Both the taped statement and testimony regarding the oral statement were admitted at trial, over the defendant's objection. Bandy's objections were based on his alleged intoxication at the time he made the statements. (Bandy, a sixty-year-old disbarred attorney, is an admitted alcoholic and drug user.) However, the admission of the statements was not assigned as error on appeal.
The indictment against Bandy, charged him with:
[U]nlawfully, willfully and feloniously, and for the purpose of satisfying his lust and indulging his depraved licentious sexual desires, when he ... was above the age of eighteen (18) years, handle, touch and rub with his hands and kiss with his lips the body of [L.H.], a child who was then under the age of fourteen (14) years.
after he, the said Jordan J. Bandy, had previously been convicted of the crime and felony of Assault with Intent to Commit a Felony, to-wit: Sodomy, said conviction having been in the District Court of Woodbury County, Iowa, being Cause No. 34461, and whereat on the 30th day of October, 1968, the Defendant pled guilty and was sentenced to serve five (5) years in the State Penitentiary at Ft. Madison, Iowa, and did serve at least one year of said sentence; and
after he, the said Jordan J. Bandy, had previously been convicted of the crime and felony of Indency with a Child, said conviction having been in the 29th Judicial District Court of Palo Pinto County, Texas, being Cause No. 7403, and whereat on the 28th day of June, 1977 the Defendant was adjudged to be guilty and was sentenced to serve not less than two (2) years and no more than ten (10) years in the Texas State Penitentiary and did serve at least one (1) year of said sentence.
At trial, the court allowed testimony from the victim, who was then six years old. Before allowing her to testify, the judge required a preliminary examination of her competence and understanding. L.H. testified as to her age, birthday (she could not remember the year of her birth), to her understanding about time and her *489 understanding that she must not lie during her testimony. After questioning from the prosecution, the defense, and the court, the judge pronounced that "I don't have any doubt about her ability to testify."
At the beginning of her direct examination, defense counsel objected to L.H. testifying as to her age, saying that the best evidence was her birth certificate. The objection was overruled. L.H.'s testimony essentially recounted the facts stated above: that she was five years old at the time of the incident; that she was returning from an Atari game with her father when the "old man" grabbed her in the hallway and gave her a fifty-cent piece; and that the man put his hand in her underpants and rubbed her "private;" that he kissed her three times on the cheek; and that her mother then discovered her and began screaming.
L.H.'s mother also testified to the events. An objection on the basis of hearsay was made to her testimony that L.H. was born on March 8, 1978; however, that objection was overruled. The neighbor and James Bandy corroborated L.H.'s and her mother's testimony.
The defendant offered no evidence on his behalf. After the State rested, he moved for a directed verdict on grounds that the state had not proved beyond a reasonable doubt that the victim was under the age of fourteen, or that Bandy was over the age of eighteen. The court overruled the motion, stating:
(A)s to this defendant and his age I have three elements. One, he told the officer his age, which was over 18. Two, he stated himself in his confession that he was 59. And three, and although I have never seen a case which brings this point forward a jury in viewing testimony views people. Not only the people on the stand but the person being charged. Even if there was no testimony in this case by the defendant himself or by some other party that he was over the age of 18. I would be almost remiss I think in letting the case go to the jury simply by virtue of the appearance of the defendant in court that he is over 18... . But setting that aside, I still have his own admission of age ... . and as to the child, I have the child's own statement of her age and I have the statement by her mother as to her age. Now if her mother, if the natural mother of a child does not know how old her child is and cannot testify to the fact, then I cannot think of anything that would be, in fact, admitted as evidence in Court.
The defendant also asked for an instruction on the weight to be accorded to L.H.'s testimony, as a child of tender years. The requested instruction, D-12, states the following:
One Witness in this case is 5 years old.
Testimony of a child of tender years, such as this should be received by you with great caution.
The weight and effect of her testimony is to be determined by you after due consideration of her age:
1. her present understanding or intelligence to understand on instruction, an obligation to speak the truth,
2. her mental capacity at the time of the occurrence in question to observe and register the occurrence,
3. her memory sufficient to retain an independent recollection of the occurrence
4. her ability to translate into words the memory of those observations, and
5. her ability to understand and respond to questions about the occurance.
The court refused the instruction on the grounds that it was an improper comment upon testimony, and it was not required by the law.
The jury found Bandy guilty. After the verdict was returned, the court held a hearing on whether Bandy should be sentenced under § 99-19-83. The defendant objected to the introduction of evidence of his prior convictions on grounds that the documents were not properly authenticated, there was no proof of an attorney's being present at the time of conviction, and there was no proof that the defendant actually served over a year; also, that neither conviction *490 was proven to be for a crime of violence. However, Bandy testified at the sentencing hearing, and he stated that he served six years in Texas and over two years in Iowa. He testified that neither of the crimes was violent, and that, while he was represented by counsel in both cases, his Texas counsel disappeared during the sentencing. The court found, based partially on Bandy's testimony, that he served over one year on both convictions, that they were per se violent, and that "beyond a reasonable doubt," Bandy could be sentenced under § 99-19-83. He was sentenced to life without parole.

I. WAS BANDY PROPERLY INDICTED ON TWO PRIOR CONVICTIONS, AT LEAST ONE OF WHICH WAS A CRIME OF VIOLENCE?
Bandy's first assignment of error is that his indictment was defective as to the charge of being a habitual offender under Miss. Code Ann. § 99-19-83, because it did not charge him with a previous crime of violence. The two prior convictions were indecency with a child and assault with intent to commit sodomy. The indictment did not specifically charge, and Bandy's testimony denied, that either crime was a crime of violence.
To be valid, an indictment under § 99-19-83 must "apprise the appellant that the State was seeking to impose a life sentence without eligibility for parole or probation." Dalgo v. State, 435 So.2d 628, 630 (Miss. 1983). The specificity required of the state in preparing such an indictment goes beyond mere form: it is part of the substance of the indictment. Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986).
Rule 6.04 of the Uniform Criminal Rules of Circuit Court Practice requires that:
(1) The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous felonies, the state or federal jurisdiction of previous conviction, and the date of judgment.
The indictment in this case contained this information. Although not specifically addressed in this appeal, the initial problem with the indictment is that it contained just that. It specifies the principal charge against Bandy, then goes on to cite with specificity the other two convictions against him, without ever informing him that the State sought to sentence him as a habitual offender.
The State is saved from reversible error in this case by the statement of defense counsel, during trial, when he inquired about "what I have been led to believe [is] an indictment of Habitual Criminal Statute 99-19-83, life without parole." Thus, it is clear that Bandy's attorney somehow gleaned from the indictment that Bandy was being charged under § 99-19-83. Since Bandy had notice of the habitual offender charge, we do not find reversible error in the inadequacy of this indictment. However, we would admonish prosecutors to properly charge habitual offenders by reference to the correct statute in the indictment.
Bandy alleges that the indictment is defective for failure to charge that either of his two prior convictions was for a crime of violence. The same situation arose in Diddlemeyer v. State, 398 So.2d 1343 (Miss. 1981), where the defendant had previously been incarcerated for inter alia, murder, grand larceny, and jail escape. The indictment did not term any of these as "violent crimes;" however, this Court held that the indictment was sufficient, terming murder a violent crime. Thus, the term "violent crime" or "crime of violence" need not be explicitly set out in the indictment, so long as at least one of the prior offenses named therein is recognized as a violent crime.

II. DID THE PROOF AT THE HEARING ON THE HABITUAL OFFENDER CHARGE ADEQUATELY SHOW THAT BANDY HAD TWO VALID PRIOR CONVICTIONS, ONE OF WHICH WAS FOR A VIOLENT CRIME?
Bandy argues that his Texas attorney was not present when he was sentenced; *491 thus, the Texas sentence is constitutionally invalid. His testimony at the hearing corroborates this contention. However, the certified copy of judgment from Texas states on its face that Bandy "appeared in person, his Counsel also being present and both parties announced ready for trial."
Bandy admitted being convicted after pleading guilty in both Iowa and Texas, and to serving time in both states. As to the absence of his Texas counsel, Bandy first stated that, "And the day of sentencing my attorney didn't show up." Later, he stated, "I don't remember his name but at the time that the judge was about to hand out the sentence when I looked up my attorney was gone. Where he had left to I don't know."
At the bifurcated hearing required under the recidivist statutes, the State must prove, beyond a reasonable doubt, that the defendant meets the requirements for sentencing as a habitual offender. The defendant has the right to be heard at this hearing. Seely v. State, 451 So.2d 213, 215 (Miss. 1984). Where, as here, however, the defendant takes the stand and admits the prior convictions, which are valid on their face, he will not be heard to challenge their constitutionality at this late date. As we stated in Phillips v. State, 421 So.2d 476 (Miss. 1982):
At a hearing conducted by a trial court pursuant to Mississippi Uniform Criminal Rules of Circuit Court 6.04, for determining the defendant's status as an habitual offender, the prosecution must show and the trial court must determine that the records of the prior convictions are accurate, that they fulfill the requirements of § 99-19-81 ... and that the defendant sought to be so sentenced is indeed the person who was previously convicted. [cites omitted]
Once the above mentioned factors have been ascertained, the trial court is not required to go beyond the fact of the prior convictions sought to be used in establishing the defendant's status as an habitual offender.
... .
In fulfilling its mission to determine whether a prior conviction is constitutionally valid for the purpose of enhancing a defendant's sentence, the trial court must not be placed in position of `retrying' the prior case. Certainly any such frontal assault upon the constitutionality of a prior conviction should be conducted in the form of an entirely separate procedure solely concerned with attacking that conviction.
Id. at 481.
The appellant also alleges under this assignment of error that the evidence presented at the hearing did not show that either of the two prior convictions was for a crime of violence. In fact, he testified at the hearing that neither crime was violent. The trial judge ruled "Indecent assault upon a minor: per se, violent; sodomy: per se, violent."
The Mississippi legislature has not, as the legislature in Utah, spoken as to what constitutes a crime of violence. The Utah statute reads:
"Crime of violence" means murder, voluntary manslaughter, rape, mayhem, kidnapping, robbery, burglary, housebreaking, extortion, or blackmail accompanied by threats of violence, assault with a dangerous weapon, assault with intent to commit any offense punishable by imprisonment for more than one year, arson punishable by imprisonment for more than one year, or an attempt to commit any of these offenses.
Utah Code Ann § 76-10-501(e) (Supp. 1986).
Bandy testified during the hearing that the conviction of assault with attempt to commit sodomy did not involve violence, but only touching, and was termed sodomy because of the oral copulation of the penis. At issue, then, is whether that charge can be termed a crime of violence under Mississippi law.
In Dalgo v. State, 435 So.2d 628 (Miss. 1983), the crime of assault with intent to rape was held to involve a crime of violence. The same result was reached in McQueen v. State, 473 So.2d 971 (Miss. *492 1985), where the defendant had been twice previously convicted of attempted rape. In the discussion in McQueen of what constitutes sufficient physical force to be termed violence in the commission of a crime, this Court cited People v. Brown, 262 Cal. App.2d 378, 68 Cal. Rptr. 657 (1968), cert. den. Brown v. California, 393 U.S. 1043, 89 S.Ct. 672, 21 L.Ed.2d 592 (1969). In that case, which involved sexual relations between a step-father and his step-daughter, the California court held "the word `violence' ... includes any use of physical force, and hence applies to any criminally lewd act upon the body of the witness child." 262 Cal. App.2d at 378, 68 Cal. Rptr. at 661.
In the absence of a legislative standard, we adopt the rationale that a separate standard of determining violence applies when the victim is a child. Thus, at least one of Bandy's previous convictions, assault with attempt to commit sodomy, was for a crime that was violent, per se.

III. IS BANDY'S SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE SUFFICIENTLY DISPROPORTIONATE TO HIS OFFENSE TO VIOLATE THE EIGHTH AMENDMENT'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT?
Section 99-19-83 has been held constitutional under the following circumstances: where the primary offense was burglary and the underlying offenses were mayhem and manslaughter; Jackson v. State, 483 So.2d 1353 (Miss. 1986); where the primary offense was aggravated assault and the underlying offenses were two convictions of grand larceny; Adams v. State, 410 So.2d 1332 (Miss. 1982); where the primary offense was burglary and the underlying offenses were grand larceny and armed robbery; Pace v. State, 407 So.2d 530 (Miss. 1981); and where the primary offense was carrying a concealed weapon and the underlying offenses were rape, assault and battery, and escape; Baker v. State, 394 So.2d 1376 (Miss. 1981). In Baker, the Court quoted with approval the following language from Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980):
[The statute's] primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.
445 U.S. at 284-285, 100 S.Ct. at 1144-45, 63 L.Ed.2d at 397.
Based on the rationale of these cases, the imposition of a life sentence on Mr. Bandy pursuant to § 99-19-83 does not constitute cruel and unusual punishment.

IV. WAS THE TRIAL COURT REQUIRED TO GIVE AN INSTRUCTION REGARDING THE WEIGHT TO BE GIVEN TO THE TESTIMONY OF A CHILD?
Bandy requested an instruction (D-12) telling the jury to receive with caution the testimony of a child of tender years. The court refused the instruction on the grounds that it was not legally required, and was an improper comment on the evidence.
In examining cases where children of tender age were allowed to testify, the requirements of this Court clearly are shown to be: that the child be examined by the trial judge prior to testimony, and that the examination shows that the child has a comprehension of past events and a moral appreciation of truthfulness. Wilson v. *493 State, 221 So.2d 100 (Miss. 1969); Thomas v. State, 222 Miss. 488, 76 So.2d 242 (1954); McNally v. State, 213 Miss. 356, 56 So.2d 834 (1952); Yarbrough v. State, 202 Miss. 820, 32 So.2d 436 (1947); Anderson v. State, 199 Miss. 885, 25 So.2d 474 (1946); Fairley v. State, 152 Miss. 656, 120 So. 747 (1929); Peters v. State, 106 Miss. 333, 63 So. 666 (1913). In none of these cases was an instruction such as the one requested by the appellant given to the jury.
Furthermore, the language of the instruction, in telling the jury to view L.H.'s testimony "with great caution," sets out the same standard given to the jury for evaluating the testimony of accomplices and co-defendants. The instruction is given in those cases because of the inherent mistrust of those witnesses' veracity. That is not necessarily the case with a child witness. In that case, it is not presumed that the child may be dishonest, but simply that he or she may not have the capacity to understand sufficiently or remember correctly the events to which he or she is testifying. A child's testimony should not be viewed with a jaundiced eye as to whether or not the child is truthful  a child may be presumed to be as truthful as any other witness. If the jury is to be instructed at all with respect to the testimony of a child, it should be told to view the testimony in the light of the child's age and understanding, not his veracity. We hold, then, that it was not error to refuse this instruction.

V. WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO ESTABLISH THE AGES OF THE VICTIM AND THE DEFENDANT?
The appellant's contention here is that the elements of the crime of fondling  which require that the victim be under fourteen years old and the perpetrator be over eighteen years old  were not proved beyond a reasonable doubt. According to Bandy, the best evidence of his and L.H.'s ages would have been birth certificates.
At the time of the offense, the victim was five years old and the defendant was sixty. Thus, this is not a case where the absolute best obtainable evidence was required to resolve a close question of age.
In this case, the issue raised by the appellant goes more to the sufficiency, and not the admissibility, of the evidence of L.H.'s and Bandy's age. In Messina v. New York Life Ins. Co., 173 Miss. 378, 161 So. 462 (1935), this Court held:
The authorities seem to be in general accord that the best proof of age is the testimony of living witnesses who were present at the birth and distinctly remember the event, or who, although not present, yet were so situated as to have positive knowledge and rememberance of the date thereof. The authorities are fairly in agreement, also, that the equal, or very nearly equal, dependability are the definite statements or declarations of the person whose age is in question, made by him during his lifetime on solemn occasions when it was his bounden duty to speak the truth, and when there was no motive or occasion, actual or supposed, on his part to speak other than the truth. The authorities do not seem to be so well in accord as to the probative value of an official birth certificate, although they do generally hold that such a certificate is of a higher grade of evidence than mere opinions.
173 Miss. at 390, 161 So. at 464.
L.H.'s age was established as five years old at the time of the incident, and six years old at the time of trial, by the testimony of L.H. and her mother. Her mother's testimony would be admissible, and sufficient, by the standard of Messina. See also Rule 803(19) of the Mississippi Rules of Evidence, which adopts, as an exception to the hearsay rule, "Reputation among members of his family by blood, adoption, or marriage ... concerning a person's birth... ." L.H.'s testimony is admissible under the rationale of Tisale v. Jefferson Standard Life Ins., 244 Miss. 839, 147 So.2d 122 (1962): "[I]t is obvious that the appellant did not and could not have any personal knowledge as to the date of his birth. His information must have *494 necessarily been based on hearsay." 244 Miss. at 846, 147 So.2d at 125.
As for Bandy's age, he admitted it to the arresting officers. Since he was obviously over the age of eighteen, he had no motive to lie about his age, even if he were aware of the elements of the fondling statute. He thus falls squarely under the holding in Messina that his admission was competent evidence. See also Miss.R.Evid. 801(d)(2) (admissions by party.) There is no merit to this assignment of error.

VI. WAS THE VERDICT CONTRARY TO THE LAW AND EVIDENCE?
Bandy cites no authority for this assignment of error. In light of the substantial evidence presented in this case, we hold that there is no merit to this assignment.
Finding no reversible error in this case, we, therefore, affirm Jordan J. Bandy's conviction of fondling and his sentence of life imprisonment without parole.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.