# IN THE COURT OF APPEALS 12/03/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00274 COA

JOHN LEE JORDAN

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. L. BRELAND HILBURN JR.

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

J. CHRISTOPHER KLOTZ

THOMAS M. FORTNER

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: DEWITT T. ALLRED, III

DISTRICT ATTORNEY: EDWARD J. PETERS

NATURE OF THE CASE: CRIMINAL (FELONY)

TRIAL COURT DISPOSITION: POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE: SENTENCED AS HABITUAL CRIMINAL 60 YRS IN THE MDOC, SAID SENTENCE TO BE SERVED WITHOUT BENEFIT OF PAROLE, PROBATION, REDUCTION OR SUSPENSION; PAY ALL COURT COSTS

BEFORE THOMAS, P.J., KING, AND MCMILLIN, JJ.

MCMILLIN, J., FOR THE COURT:

John Lee Jordan was convicted by a jury in the Circuit Court of Hinds County of the crime of possession of cocaine with the intent to distribute. The indictment had charged Jordan with being a habitual criminal pursuant to the provisions of section 99-19-81 of the Mississippi Code of 1972 by virtue of two previous drug-related felony convictions. Upon the return of the jury verdict and subsequent satisfactory proof of Jordan's prior convictions, the court sentenced Jordan to a term of sixty years imprisonment without the possibility of parole.

Jordan now appeals his conviction to this Court, raising seven issues. We conclude that none of the issues requires the reversal of Jordan's conviction, and we, therefore, affirm. The issues raised by Jordan in his appeal will be identified and discussed in the same order as presented by him after a brief recitation of the facts necessary to understand a discussion of the issues.

I.

Facts

Acting upon reliable information, officers obtained two search warrants for two separate locations in Hinds County for the purpose of seeking evidence of John Lee Jordan's drug-related activities. The warrants were both served and the resulting searches conducted on the same day. Caches of cocaine were found at both locations, along with other incriminating evidence, all of which was linked to Jordan. As a result, he was indicted by a Hinds County grand jury on a two-count indictment of possession of cocaine with intent to distribute. Each count specified one of the locations mentioned in the search warrant, identifying it by reference to a street name and number. About one month prior to trial, the State moved to amend the indictment to delete certain language, including the references to the two separate locations where drugs had been discovered. After the amendment, the defendant no longer faced two counts of criminal conduct, but was charged under a single-count indictment specifying only the date of the crime and containing no specifics as to the location that the alleged crime was committed beyond identifying that it was within the jurisdictional limits of the court.

The facts and circumstances leading up to this amendment to the indictment and the purposes for it remain a mystery. There is no indication in the record that a hearing was held on the motion, and there is, in fact, no separate motion setting forth the basis for the requested amendment beyond a notation at the bottom of the order itself that states, "Move entry of above order," followed by the signature of the prosecuting attorney. It is worthy of note, however, for reasons that will appear more fully later in this opinion, that immediately following this notation is a second brief statement as follows: "Agreed to and approved" followed by the signature of Jordan's attorney of record.

II.

Evidence of the Defendant's Prior Drug Convictions and Prior

Uncharged Drug-Related Activity Presented to the Jury

Jordan complains of admission of evidence concerning his prior drug-related convictions and of testimony by Susan Ransom of her knowledge of his past drug-related activities for which he had not been charged criminally. While Jordan raises these as separate issues, we determine that they are controlled by essentially the same considerations, and therefore, combine them for discussion.

Jordan elected to testify in his own defense, primarily for the purpose of denying any knowledge of or connection with the physical evidence seized under the search warrants. He also took pains to deny that he had made, on the day of his arrest, certain incriminating admissions to the investigating officers concerning his ownership of the drugs and related contraband. He claimed, rather, that the police officers who had previously testified as to such statements during the prosecution's case in chief were simply being untruthful in their testimony.

During cross-examination, the prosecuting attorney was permitted, over the objection of defense counsel, to inquire as to Jordan's past criminal convictions for drug offenses. On appeal, Jordan claims that the trial court erred in admitting this evidence without first conducting an on-the-record analysis of the factors governing admissibility of such evidence as set out in *Peterson v. State*, 518 So. 2d 632, 636 (Miss. 1987).

Jordan seems to argue in his brief that the failure of the trial court to specifically list and consider the five factors set out in the *Peterson* opinion, standing alone, is a sufficient ground for reversal. *See Peterson,* 518 So. 2d at 636. The issue, however, is not that simple. The *Peterson* case deals exclusively with evidence of prior criminal convictions sought to be admitted for the purpose of impeaching the credibility of the witness under Mississippi Rule of Evidence 609. However, in this case, the trial court specifically ruled, prior to the admission of evidence of these convictions, that it was admitting them as being probative on the issue of Jordan's intent in possessing the drugs, assuming the jury were to decide the issue of possession against the defendant. Thus, the admissibility of the evidence is governed by the provisions of Rule 404(b) and not Rule 609. A review of the five factors required to be considered for admissibility of Rule 609 evidence quickly shows that most, if not all, of the factors have little bearing on the admissibility of Rule 404 evidence. Whether evidence is probative of a witness's propensity to tell the truth does nothing to determine whether it is probative on issues covered by Rule 404, such as motive, intent, opportunity, or other similar matters covered under Rule 404(b). In this case, the trial court did, in fact, conduct an on-the-record analysis wherein it found such evidence admissible on the specific issue of intent, and concluded that the prejudicial effect of the evidence did not outweigh its probative value. A limiting instruction on the subject was properly given. There is no error here.

The same considerations govern the issue of the testimony of Susan Ransom concerning her knowledge of his previous uncharged drug-related activities.


III.

Amendment To Indictment

Jordan further urges that his conviction must be reversed due to a pre-trial amendment to the

indictment. Originally, the grand jury returned a two-count indictment, charging that the caches of drugs at the two different locations constituted separate and distinct offenses. Subsequently, on motion of the State, *to which the defendant agreed*, the indictment was amended to remove any reference to the separate addresses where the drugs were recovered and the separate counts were collapsed into a single charge. Jordan now claims that this was a substantive change in the indictment, which may not properly be done except by action of a duly-empaneled grand jury. He relies upon such cases as *Reed, Griffin, and Rhymes. Rhymes v. State,* 638 So. 2d 1270 (Miss. 1994), *Griffin v. State,* 540 So. 2d 17 (Miss. 1989), and *Reed v. State,* 506 So. 2d 277 (Miss 1987). His argument suggests that he feels aggrieved by the fact that the amended indictment, by not charging the location of the crime, fails to sufficiently inform him of the nature of the charge against him under constitutional considerations. He alleges that the State, by its amendment, got "two swings at the same pitch" by being able to put on proof of drugs being found at both locations, in effect trying him in the alternative.

The State counters that the effect of the amendment is essentially the same as the State having elected to dismiss one of the counts, a procedural change permitted without grand jury action. See 2 Charles E. Torcia, *Wharton's Criminal Procedure* §269 (13th ed. 1990). While we agree that dismissing one count in a multi-count indictment is procedural, we respectfully disagree that this action is comparable to that procedure. Had the State simply dismissed one of the counts, leaving the other unamended, there would have been a substantial change in regard to the admissibility of evidence. Any evidence regarding the dismissed count would have been admissible, if at all, for some limited purpose permitted by Mississippi Rule of Evidence 404, and the jury would have been instructed as to the limited purpose for which such evidence was received. Under the procedure utilized, the State was free to introduce evidence as to the drugs found at both locations on the substantive question of guilt. The defendant is clearly correct in his assertion that he was subject to being convicted by the jury upon its conclusion that the State had proved beyond a reasonable doubt that he possessed drugs at either location even though it may have concluded that the proof concerning the other location was inconclusive.

Thus, this Court concludes that, accepting the assumption that the two original counts of the indictment were separate and distinct crimes, it was improper to combine the two crimes into a single count. By way of example, if two burglaries were committed on the same evening, the State would not be permitted to charge a defendant under one count of burglary without specifying which one, and then put on evidence of both crimes in the hope the jury would conclude that he did one or the other. This would constitute a substantial violation of the defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation" brought against him. U. S. Const. amend. VI.

Nevertheless, in the matter of drug-related crimes, the answer is not so clear as it might first appear as to whether Jordan was, in fact, properly chargeable with two separate offenses. The issue has arisen in other jurisdictions as to whether one charged with possession of drugs when the drugs are found in more than one location has committed one offense or multiple offenses. Decisions from other jurisdictions convince us that this is not a pure question of law but is a mixed question of law and fact. Perhaps the best statement of the issue is found in *United States v. Johnson. United States v. Johnson,* 977 F.2d 1360, 1374 (10th Cir. 1992).

In drug cases, the question frequently arises whether a defendant's entire cache of drugs is

to be considered as a single unit or as separate units for purposes of defining the extent of his criminal activity. Although a supply of narcotics generally is not divisible for purposes of prosecution, various stashes of that drug are considered separate where the evidence indicates that they were intended for different purposes or transactions. Moreover, a determination of the existence of separate stashes is not constrained by any particular measure of spatial or temporal distance. The proper focus of a "separate stash" inquiry is not on logistics but on demonstrated intent.

*Johnson,* 977 F. 2d at 1374 (citations omitted).

In *State v. Stevens*, the Wisconsin Court of Appeals considered a claim by the defendant that he was being subjected to double jeopardy when the State sought to try him for felony possession of a supply of marijuana when he had already pled guilty to a misdemeanor possession charge for a quantity seized from a bag carried on his person. *State v. Stevens*, 354 N.W.2d 762, 766 (Wis. Ct. App. 1984). He claimed that the marijuana in his pocket and the larger supply found elsewhere were all a part of one cache of drugs. The court accepted that argument, based upon a finding that the State offered no countering evidence regarding the divisibility of the caches. *Id.* at 767. (The court, however, thwarted what it called Stevens' "legalized gamesmanship" by vacating his misdemeanor conviction and remanding for trial on the felony charge. *Id.*) Likewise, in *Jackson v. State*, the District Court of Appeals for Florida determined that separate prosecutions for a misdemeanor charge for a bag of marijuana found in the defendant's pocket and a felony charge for a larger quantity of the same drug found in the back seat of the defendant's car could not be maintained because the facts constituted only one crime. *Jackson v. State*, 418 So. 2d 456, 457 (Fla. Dist. Ct. App 1982).

There is no comparable case law in Mississippi, and we do not cite any of the foregoing authority to purport to establish a rule in this State, since that is not necessary for the resolution of this case on its unique facts. Our purpose is simply to demonstrate that, had the defendant elected to challenge the proposed amendment, there would have been authority for the State to assert that the purpose of the amendment was to acknowledge that its proof was insufficient to establish that the defendant was maintaining these two supplies for such separate and distinct purposes as to constitute two separate offenses, and that, having so concluded, it was satisfied to accept that the separate caches were but a single crime. Such a change would appear to be procedural rather than substantive. Nothing in such an amendment would seem in any way to alter a possible defense available to the defendant. *Reed v. State,* 506 So. 2d 277, 279 (Miss. 1987). Neither would it expose the defendant to double jeopardy danger, since the State would be maintaining that both caches were a part of the crime being tried. Thus an acquittal would clearly prohibit a second prosecution based upon drugs found at either location. *See Jackson,* 418 So. 2d at 457; *Stevens,* 354 N.W.2d at 767.

By his consent to the amendment, Jordan has prevented a record being made on the pertinent issues that would have enabled this Court to consider the legal issues involved. Further, by his action, he has prevented the trial court from receiving evidence on the factual issues; namely, the matter of Jordan's intentions and purposes in maintaining separate stashes. Having actively participated in this amendment process, Jordan cannot now be heard to complain that his rights have been violated

thereby.

It seems clear that there was some sort of agreement between the State and the defendant in regard to the amendment, even though we must read between the lines to discover it, since the record is devoid of anything concerning the amendment beyond the fact, noted on the face of the amending order itself, that the State for moved the amendment, and the defendant consented. It can readily be seen that the defendant benefited from the arrangement, for he effectively ended forever the possibility of adding two felony convictions to his record rather than one.

We conclude that, in the limited circumstance where the State proposes to amend a drug possession indictment to collapse any number of separate possessions into one count and the defendant affirmatively agrees, such an amendment is procedural and not substantive, and, thus, does not violate the rule of such cases as *Brandau v. State,* 662 So. 2d 1051, 1055 (Miss. 1995) and *Sanders v. State,* 313 So 2d 398, 401 (Miss. 1975). We, therefore, decline to disturb the judgment of conviction on this issue.


IV.

Sentence Enhancement and Cruel and Unusual Punishment

Jordan next assigns as error the court's doubling of his sentence pursuant to §41-29-147 of the Mississippi Code. Jordan claims that because he did not have notice that the State intended to ask the court to double his sentence, he is entitled to have his case remanded for re-sentencing. The State alleges that Jordan is procedurally barred from raising this issue for the first time on appeal because he failed to object at the trial level. Prior decisions of our supreme court clearly indicate that informing a defendant of his exposure to enhanced punishment due to prior offenses is an essential part of an indictment. *Akins v. State,* 493 So. 2d 1321, 1322 (Miss. 1986); *Bandy v. State,* 495 So. 2d 486, 490 (Miss. 1986). Thus, we conclude that this issue is not subject to waiver, but may be raised for the first time on appeal. *See Akins,* 493 So. 2d at 1322. We will, therefore, address this claim of error on the merits.

Section 41-29-147 of the Mississippi Code provides that "any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized . . . ." Miss. Code Ann. § 41-29-147 (1972). While our supreme court has commented on the advisability of specifying the statute under which enhanced punishment is being sought, *see Dalgo v. State,* 435 So. 2d 628, 630 (Miss. 1983), nevertheless, it has yet to find such an omission to constitute reversible error. In fact, it has held on several occasions to the contrary. *See Jones v. State,* 523 So. 2d 957, 960 (Miss. 1988)*; Bandy,* 495 So. 2d at 490; *Dalgo,* 435 So. 2d at 630. The *Jones* case is particularly on point. In that case, the defendant was subject to enhanced punishment under the same statutes affecting Jordan's conviction and received an identical sentence. *Jones,* 523 So. 2d at 960. Like Jordan, he complained that he was not informed in the indictment that his sentence was subject to being doubled under section 41-29-147. *Id.* The supreme court stated that "the indictment need not recite the statute number under which the enhanced punishment is sought." *Id.; Ellis v. State,* 469 So. 2d 1256, 1258 (Miss. 1985). In the case now before us the indictment set out the essential details of Jordan's two prior felony convictions, including the fact that they were both drug-

related. Based on the precedent set out in *Jones*, this was clearly enough to inform Jordan, not only of his exposure to enhanced punishment under section 99-19-81, but also that he was subject to having his resulting sentence doubled under section 41-29-147.

Jordan also argues that the resulting sentence violates his rights under the Eighth Amendment in that a sentence of this duration for the offense charged constitutes cruel and unusual punishment. The supreme court has held that "a sentence will not be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Stromas v. State,* 618 So. 2d 116, 122 (Miss. 1993). The legislature has determined, as a matter of public policy in this State, that repeated drug-related offenses expose the offender to the risk of severe punishment. There has, to date, been no successful constitutional challenge to this statutory scheme of dealing with a problem perceived to be of major proportion. Jordan's sentence was within the statutory guidelines, and as a result, we find his sentence beyond our authority to disturb.

V.

Arrest of defense witness

One of the defendant's witnesses, Michael Ransom, testified on direct that all of the drugs for which Jordan was being tried, in fact, belonged to him. The trial court, being apprised in advance of Ransom's proposed testimony, conducted an on-the-record inquiry to attempt to fully inform Ransom of the possible consequences of such testimony; however, Ransom persisted in his intention to make these damaging admissions under oath. Immediately upon the completion of his testimony, apparently not within the view of the jury, Ransom was arrested and incarcerated for the crimes he had just admitted to committing. Prior to the close of the evidence in the case, Ransom had a change of heart and was recalled to the stand by the State in rebuttal. This time Ransom testified that the drugs were not his, that he had been asked by Jordan to claim ownership of the drugs in order to exonerate Jordan, and that he had been informed by Jordan and others-- incorrectly, to his dismay -- that the crimes were too old to support a charge against him.

Jordan claims this was prosecutorial misconduct, in that it amounted to an intimidation of his witness. His sole authority cited is the Sixth Amendment and the case of *Hosford v. State*, 525 So. 2d 789 (Miss. 1988). *Hosford* dealt with the issue of allegations of prosecutorial misconduct where the prosecuting attorney persisted in cross-examining the defendant in a child sexual abuse case about other alleged odious conduct of a similar nature for which the prosecuting attorney had no substantial basis in fact. *Id.* at 794. Thus, though *Hosford* stands generally for the proposition that an overly-zealous prosecutor can do more harm to his case than good, it does not speak directly to the allegations made against the prosecutor in this case. It is difficult to understand what Jordan would have the district attorney's office do when a witness takes the stand and brazenly admits to a felony offense which, if his admissions are true, would result in the acquittal of the defendant then on trial. Is there some unspoken code of honor that requires the State to permit this person, who by his own testimony is either a confessed felon or a perjurer, to remain at large until the end of the trial to give the defendant a "sporting chance" to see if the jury will believe the witness and acquit the defendant? We think not. The fact that the State moved with all deliberate speed to arrest this witness simply cannot be seen as prosecutorial misconduct. Those persons prepared to take the witness stand and admit under oath to the commission of a drug-related felony should be prepared to expect a swift and

certain response from law enforcement officials. It may very well be that Ransom was telling the truth when he first took the stand and that he subsequently changed his story to falsely incriminate Jordan in order the escape prosecution for the crime to which he had just confessed under oath. That was an issue of fact for the jury to resolve, and defense counsel was certainly entitled to i nquire into the circumstances of Ransom's changed story in order to attempt to impeach his recanting testimony; however, if Ransom was "intimidated" by his speedy arrest, a fact of which we have little doubt, the circumstances were of his own making and did not arise from prosecutorial misconduct.

VI.

A.

Sufficiency of Evidence

Jordan's next assignment of error is that the trial court erred in denying his motion for a judgment notwithstanding the verdict. After the jury returned a verdict against him, Jordan moved for a judgment notwithstanding the verdict, thereby challenging the legal sufficiency of the evidence. This motion was denied.

The standard of review for a challenge to the sufficiency of the evidence, in a criminal

case, can be found in *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993):

> In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with . . . . guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

In order for the jury to find Jordan guilty of possession with intent to distribute, the prosecution had to prove the following elements beyond a reasonable doubt: (1) possession of a controlled substance, (2) intent to possess the controlled substance, (3) knowledge of the contraband nature of the substance, and (4) intent to distribute the controlled substance. Miss. Code Ann. § 41-29-139(a)(1) (1989). At Jordan's trial the State presented the testimony of a narcotics agent who testified that she went to Jordan's mother's house with a search warrant, and Jordan's mother directed the agent to Jordan's room. The agent revealed that she discovered a gun, cocaine, scales, and $1,900 in cash in one of Jordan's jackets in his closet. A second officer testified that he found cocaine in plastic bags at another location by a fence, and that Jordan was sitting on the porch of a house near this fence. Both officers testified that when they confronted Jordan, he admitted that the cocaine, the gun, the money, and the scales were his. Susan Ransom testified that she saw Jordan put the cocaine by the fence. After considering this evidence in the light most favorable to the State, we find that there was

sufficient evidence to support Jordan's conviction, and as a result, we find this issue to be without merit.

B.

Weight of the Evidence

Jordan also asserts that the trial court erred when it refused to grant his alternative motion for a new trial. According to the supreme court "[n]ew trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice." *McClain,* 625 So. 2d at 781. We will reverse and remand for a new trial only upon reaching the conclusion that the trial court has abused its discretion in failing to grant a new trial. *Strong v. State,* 600 So. 2d 199, 204 (Miss. 1992) (citations omitted).

Jordan's primary defense was that the drugs were not his. In the face of Jordan's denial, the jury heard the testimony of two narcotics agents and Susan Ransom who testified to facts that would indicate to the contrary. None of this evidence was incredible, unbelievable, or substantially impeached.

We find that the jury was entitled to conclude, after hearing all of the testimony, that the proof established that Jordan possessed the cocaine and that he had the intent to distribute. As a result, we find that the verdict was not against the overwhelming weight of the evidence, and the trial court did not err when it overruled Jordan's motion for a new trial.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF SIXTY (60) YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**